THE PEOPLE OF THE STATE OF NEW YORK ex rel. INTERBOROUGH
    RAPID TRANSIT COMPANY, Appellant and Respondent, *v.*
    CLARK WILLIAMS, as Comptroller of the State of New York,
    Respondent and Appellant.

**Tax** — construction and application of **Rapid Transit Act** exempt-
    ing equipment of subway railroad from taxation — construction
    of section 185 of Tax Law taxing gross earnings of elevated
    railroad or surface railroad not operated by steam — such rail-
    road corporation may not be taxed on gross earnings of subway
    operated by it.

Section 35 of the Rapid Transit Act (as amended by L. 1900, ch. 616)
    provides that a corporation operating a subway road "shall be *exempt
    from taxation* in respect to his, their or its interest under said contract
    and in respect to the rolling stock and all other equipment of said road,
    but this exemption shall not extend to any real property which may be
    owned or employed by said person, firm or corporation in connection
    with the said road." The relator is engaged in the operation of both sub-
    way and elevated street railroad systems in the boroughs of Manhattan
    and the Bronx. · *Held,* that this exemption covers the interest acquired
    and property used under and in carrying out contracts for the equip-
    ment and operation of the subway and does not extend beyond that,
    and is not broad enough to exempt relator from the payment of any
    franchise tax in its subway operations.
Although the Tax Law (§ 185) provides that every corporation owning or
    operating any elevated railroad or surface railroad not operated by steam
    shall pay an annual tax on its gross earnings " from all sources within
    this state," etc., these words must be interpreted so as to carry out what
    must have been the intention of the legislature, and it was not the pur-
    pose to make the statute so all comprehensive as to include the receipts
    from the employment of the franchise in ways which could in no sense
    be viewed as connected with, incidental to or as a result of the operation
    of the elevated road. The relator, because operating an elevated road
    under a lease, is not subject to a franchise assessment measured by a
    percentage on the gross receipts from its subway as well as on those
    from the elevated road.
Although not assessable as to its subway roads under section 185 of the
    Tax Law, *it seems* that within sections 182 and 184 thereof are provisions
    broad enough to provide for a franchise tax against the relator in
    respect of its equipment, maintenance and operation of the subway roads.
*People ex rel. Interborough R. T. Co.* v. *Williams,* 138 App. Div. 612, reversed.

(Argued September 29, 1910; decided November 29, 1910.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 23, 1910, which confirmed in part and reversed in part a determination of the defendant in assessing franchise taxes against the relator under section 185 of the Tax Law for the years ending June 30, 1907, 1908 and 1909 respectively.

Said comptroller held that for the privilege of exercising its corporate franchise in operating an elevated street railroad under lease the relator should pay an annual tax of one per cent upon the gross earnings derived not only from the operation of said road but also from the operation of its independent subway railroad and also three per cent upon the amount of dividends declared or paid in excess of four per cent upon the actual amount of paid-up capital employed by such corporation in the operation of said subway road as well as, if any, in the operation of said elevated railway. The gross receipts from the operation of each road amounted to several million dollars each year and there is no opposition by relator to the imposition of the tax upon the gross receipts derived from the operation of the elevated road.

The Appellate Division affirmed the former part of the Comproller's determination but overruled the latter part relating to tax on dividends.

Under the so-called Rapid Transit Act, chapter 4, Laws of 1891, the city of New York entered into what were known as rapid transit contracts No. 1 and No. 2 respectively with one McDonald and the Rapid Transit Subway Construction Company for the construction, equipment and operation of a subway railroad in the boroughs of Manhattan and Brooklyn. The relator was organized under the provisions of the Railroad Law and of said Rapid Transit Act and its certificate of incorporation provided that it should have the power to undertake the construction, equipment, operation and maintenance of the railroad then constructed and in process of construction under the McDonald contract and also the power to enter into and perform any contract for the construction and operation of any other rapid transit railway authorized

or which might be authorized to be constructed under the provisions of said Rapid Transit Act.

Thereafter said relator acquired the right and assumed the duty of equipping and operating the subway railroad constructed under the two contracts hereinbefore referred to under assignments or agreements dated June 10, 1902, and August 10, 1905.   In addition to this, on or al out April 1, 1903, it made a lease with the Manhattan Railroad Company whereby it undertook the operation of various elevated railroads in the boroughs of Manhattan and the Bronx owned or controlled by said company, and during all of the years involved in this controversy it was engaged in operating both subway railroads and elevated railroads under the contracts and leases referred to.

*James L. Quackenbush, Richard Reid Rogers* and *Ralph Norton* for relator, appellant and respondent.   The relator's operation of the elevated railroads in New York city under the lease from the Manhattan Railway Company has not made it subject to the franchise tax measured by a percentage on its subway earnings. (*People ex rel. I. R. T. Co.* v. *Tax Comrs.*, 126 App. Div. 610; *C. R. R. Co.* v. *Georgia*, 92 U. S. 655; *Wright* v. *G. R. R. Co.*, 216 U. S. 420.)   The relator is exempt from all taxation by section 35 of the Rapid Transit Act, and the effect of section 185 of the Tax Law, as construed by the Supreme Court in this case, in so far as it sustains a franchise tax measured by a percentage of relator's gross earnings from subway operations, impairs the obligation of a valid contract. (*People ex rel. I. R. T. Co.* v. *Tax Comrs.*, 126 App. Div. 610; 195 N. Y. 618; Cooley on Taxn. [3d ed.] 343; *J. B. Bank* v. *Skelly*, 66 U. S. 436; *New Jersey* v. *Yard*, 95 U. S. 104; *Will. R. R. Co.* v. *Reid*, 80 U. S. 264; *Humphrey* v. *Pegues*, 83 U. S. 244; *Furrington* v. *Tennessee*, 95 U. S. 679; *Dodge* v. *Woolsey*, 18 How. [U. S.] 331; *Asylum* v. *New Orleans*, 105 U. S. 362; Bishop on Cont. § 996; *Gillette* v. *Bank of America*, 160 N. Y. 549; *White* v. *Hoyt*, 73 N. Y. 505.)   Relator is not

subject to a franchise tax under section 185 of the Tax Law measured by a percentage of its subway earnings. (Dwarris on Statutes, 749; *People ex rel. M. T. Co.* v. *Miller,* 177 N. Y. 51.)

*Edward R. O'Malley,* Attorney-General (*Edward H. Letchworth* of counsel), for defendant, respondent and appellant. An exemption from taxation will not be allowed unless clearly and explicitly granted by the statute. (*People ex rel. W. F. I. Co.* v. *Davenport,* 91 N. Y. 574; *People ex rel. T. T. S. R. Co.* v. *Comrs.,* 95 N. Y. 554; *People* v. *Coleman,* 121 N. Y. 542; 135 N. Y. 231.) The exemption granted the relator does not extend to its corporate franchise, but includes only certain specific property and property rights. (*People ex rel. W. L. Co.* v. *Gaus,* 199 N. Y. 147; *People ex rel. I. R. T. Co.* v. *Tax Comrs.,* 126 App. Div. 610; 195 N. Y. 618; *People ex rel. U. S. A. P. P. Co.* v. *Knight,* 174 N. Y. 475; *City of New York* v. *Bryan,* 196 N. Y. 158; *W. R. R. Co.* v. *Reid,* 13 Wall. 264; *P. R. R. Co.* v. *Maguire,* 20 Wall. 36; *Nichols* v. *N. H. & N. Co.,* 42 Conn. 103; *State* v. *B. & O. R. R. Co.,* 48 Md. 49.) The exemption granted the relator, being merely a property exemption, does not prevent such property being made the measure of the franchise tax. (*People ex rel. A. J. J. Co.* v. *Roberts,* 159 N. Y. 70; *People ex rel. U. S. A. P. P. Co.* v. *Knight,* 174 N. Y. 475; *Plummer* v. *Coler,* 178 U. S. 115; *Snyder* v. *Bettman,* 190 U. S. 249; *Pollock* v. *F. L. & T. Co.,* 157 U. S. 429; *Comm.* v. *Provident Inst.,* 12 Allen, 312; *Comm.* v. *Hamilton Co.,* 12 Allen, 298; *Coite* v. *Society for Savings,* 32 Conn. 173; *Strode* v. *Commonwealth,* 52 Penn. St. 181; *Monroe Bank* v. *City of Rochester,* 37 N. Y. 365.) That part of the tax based upon gross earnings was properly computed on the earnings from the subway as well as from the elevated railways. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Roberts,* 32 App. Div. 113; 157 N. Y. 677.) That part of the tax based on excess dividends was properly computed by the comptroller by considering all the dividends declared by the relator.

1910.] People ex rel. Interb. R. T. Co. v. Williams. 97

N. Y. Rep.] Opinion of the Court, per Hiscock, J.

(*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Roberts*, 32 App. Div. 113 ; 157 N. Y. 677; *People* v. *H. Ins. Co.*, 92 N. Y. 328.) The statute makes the excess dividends declared upon all the capital employed the measure of the tax, not merely the dividends on capital employed in operating a surface or elevated road. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Knight*, 173 N. Y. 255 ; *People ex rel. N. Y. & E. R. F. Co.* v. *Roberts*, 168 N. Y. 14.) The relator was clearly employing its capital in the operation of the elevated roads. (*People ex rel. L. D. Mills* v. *Wilson*, 121 App. Div. 376 ; *People* v. *Dayton*, 55 N. Y. 367; *Hassan* v. *City of Rochester*, 67 N. Y. 528 ; *People* v. *Adelphi Club*, 149 N. Y. 5.)

Hiscock, J. Originally the relator alone complained of the assessment made by the comptroller of the franchise tax against it. On appeal to the Appellate Division this determination was in part affirmed and in part reversed, with the result that each side now appeals.

The relator is engaged in the operation in the boroughs of Manhattan and the Bronx of both subway and elevated street railroad systems, which are assumed to be distinct from one another.

Section 185 of the Tax Law provides as follows: " Franchise tax on elevated railroads or surface railroads not operated by steam. Every corporation, joint stock company or association owning or operating any elevated railroad or surface railroad not operated by steam shall pay to the state for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity within this state, an annual tax which shall be one per centum upon its gross earnings from all sources within this state, and three per centum upon the amount of dividends declared or paid in excess of four per centum upon the actual amount of paid-up capital employed by such corporation, joint stock company or association. Any such railroad corporation whose property is leased to another railroad corporation shall only be required under this section to pay a tax of three per centum upon the

7

98    People ex rel. Interb. R. T. Co. *v.* Williams.    [Nov.,

Opinion of the Court, per Hiscock, J.        [Vol. 200.

dividends declared and paid in excess of four per centum upon the amount of its capital stock." (Cons. Laws, ch. 60.)

The comptroller took the view that under this statute the relator, because of its operation as lessee of the elevated railroads, should be assessed in an amount of one per cent, not only on its gross earnings derived from the operation of said roads, but also upon its gross earnings derived from the operation of its subway roads, and three per cent upon the amount of dividends declared in excess of four per cent upon all of its paid-up capital employed in the equipment and operation of said latter roads, and the Appellate Division sustained him as to the tax on gross receipts. We have been unable to agree in full with the contentions of either party on the appeal, and, therefore, we shall be compelled to consider these views singly rather than in any general classification.

The relator in the first instance urges that it is expressly exempted from the imposition of any tax whatever on its franchise as employed or enjoyed in the operation of the subway roads. This claim is based on the provisions of section 35 of the Rapid Transit Act, chapter 4, Laws of 1891, as modified in subsequent years, and which section provides as follows: " The equipment to be supplied by the person, firm or corporation operating any such (subway) road, shall include all rolling stock, motors, boilers, engines, wires, ways, conduits and mechanisms, machinery, tools, implements and devices of every nature whatsoever used for the generation or transmission of motive power and including all power houses, and all apparatus and all devices for signaling and ventilation. Such person, firm or corporation shall be exempt from taxation in respect to his, their or its interest under said contract and in respect to the rolling stock and all other equipment of said road, but this exemption shall not extend to any real property which may be owned or employed by said person, firm or corporation in connection with the said road." (L. 1900, ch. 616.)

We do not believe that this provision is broad enough to sustain relator's claim and exempt it from the payment of

any franchise tax in its subway operation. The preceding sections of the Rapid Transit Act provided in detail for the construction, equipment and operation of subway roads, and for the execution of a contract with such person, firm or corporation as in the opinion of the board of rapid transit commissioners should be best qualified to carry out the contracts to be made. They likewise provided for the payment of rentals by the contracting party, and in effect for an assignment of contracts entered into under the authority of the act with the written consent of such commissioners. These provisions thus very completely covered the execution of contracts for the construction and operation of said roads, and fixed the benefits and obligations to be derived from and incurred under such contracts. The legislature then enacted the provision in question whereby " the person, firm or corporation " operating such roads should be exempt from taxation in respect to his, their or its " interest under said contract " and in respect to rolling stock and equipment. It seems very clear to us that this exemption covered just what is plainly implied by the natural meaning of the language, namely, the interest acquired and property used under and in carrying out the contracts for the equipment and operation of the road, and that it did not extend beyond that.

Two steps were necessary before the relator could enter upon the equipment and operation of the railroad. The first of these was its creation through incorporation, and the second was the procuring and execution of the contracts for equipment and operation with resulting rights and obligations thereunder. While doubtless the first was taken with express reference to the second the two were entirely separable and distinct, and there was no difficulty if the legislature saw fit in exempting relator from taxation " in respect to    *    *    * its interest under said contract and in respect to the rolling stock and all other equipment of said road " without exempting it from taxation, because of privileges and advantages which it enjoyed through corporate existence in securing and

carrying out the contracts under which it enjoyed the "interest" mentioned, and this is what it did.

Counsel has vigorously contended that the importance and difficulties of the rapid transit situation in New York and the desirability of effecting some such arrangement as was secured by relator's incorporation required substantial inducements, and that the spirit of the situation makes present assessment of the relator on its franchise a breach of good faith if not an impairment of contractual rights which we should avoid by broad interpretation of the statute. While we are unable to find in the language of the statute a requirement as claimed by relator's counsel that the equipment and operation of the road must be undertaken by a corporation, still if we concede for present purposes that the general argument of counsel for exemption has force it was one to be addressed to the legislature, and it is possible that if the present statutes providing for assessments of franchises had been fully foreseen and considered the exemption clause would have been made broader. But however this may be, and whatever the cause may have been, the language of the statute which actually was passed by the legislature is not broad enough under any proper rules of interpretation fairly to include the exemption now claimed, and this being so we cannot substitute what would be equivalent to an amendment for judicial construction.

While it is not desirable to review at length and in detail the authorities cited in behalf of the relator, it may be stated generally that they do not sustain his position under the language of this statute, and this statement will be fortified by brief analysis of the leading authorities cited on this point.

In *Wilmington R. R.* v. *Reid* (13 Wall, 264) the court had before it for construction a statute providing that "The property of said company (plaintiff in error) and the shares therein shall be exempt from any any public charge or tax whatsoever." Here was a statute broadly exempting all of the property of the company from taxation, and the only question was whether a tax on the franchise of the corporation was a violation of this statute. The court held that nothing was

better settled than that the franchise of a private corporation was property, and this being so, of course, it was exempt.

In *Gulf & S. I. R. R. Co.* v. *Hewes* (183 U. S. 66) the charter of the plaintiff railroad company declared " that said company, its stock, its railroads and appurtenances and all its property in this state, necessary or incident to the full exercise of all powers herein granted, shall be exempt from taxation," etc. Again, the only question was whether a privilege tax was a tax on the property of said company and, therefore, a violation of the statute and it was again held that a franchise was property and that, therefore, the proposed tax was invalid.

In *Wright, Comptroller, etc.,* v. *Georgia R. R. & Banking Co.* (216 U. S. 420) the court was called on to interpret a statute providing that " The stock of the said company * * * shall be exempt from taxation for and during the term of seven years." (p. 422.) It was held that the capital stock of a corporation is the capital upon which the business is to be undertaken and is represented by property of every kind acquired by the company, while the shares are mere certificates representing a subscriber's contribution to the capital stock and measuring his interest in the company, and. further that the stock exempted in this case was the capital or property of the corporation ; that a law which sought to impose a tax on the franchise of a railroad company whose property is exempt from taxation was a violation of the exemption contract.

It will thus be seen that each one of these cases dealt with the construction of a law granting a general exemption to a corporation of its property from taxation and the question was whether a franchise was property within the meaning of the statute before the court for interpretation.

In this respect the facts in each case differed from those of the present one where the exemption by its terms extends only to the interest under a given contract and certain specified property.

But holding that there is no such general exemption as is claimed by relator we are nevertheless unable to agree with

102   People ex rel. Interb. R. T. Co. *v.* Williams.   [Nov.,

Opinion of the Court, per Hiscock, J.        [Vol. 200.

the views adopted by the comptroller and the Appellate Division that the relator because operating an elevated road under a lease was subject under section 185 of the Tax Law to a franchise assessment measured by a percentage on the gross receipts from its subway as well as on those from the elevated road.

This contention and decision has been based on a literal interpretation of the statute that every corporation operating an elevated railroad shall pay for the privilege of exercising its corporate franchise an annual tax which shall be one per centum upon its gross earnings "from all sources within this state," etc., and, of course, such literal interpretation would support the conclusion which has been reached. We do not think, however, that such interpretation is justifiable under the circumstances of this case.

On the facts set forth in the preliminary statement and appearing in the record we think that fairly it must be stated that the primary and controlling purpose which led to the incorporation of relator was that of equipping and operating the subway roads then being and thereafter constructed in the city of New York. Other facilities for the transportation of passengers, including the elevated railroads, were already in existence when it was organized, and its organization entered into the general scheme which was then being perfected of adding subway roads as an important factor in solving the difficult question of transportation facilities which for a long time had perplexed the city of New York. If this assumption and statement be correct, then it quite naturally follows that the lease by relator of the Manhattan elevated railroads was in a certain sense an incidental and secondary step undertaken by it doubtless for the purpose of supplementing the operation of the subway roads and making more perfect and satisfactory the accommodations which it would be able to offer to the traveling public. It is stated without substantial dispute that relator's capital of thirty-five millions of dollars is wholly invested in the equipment and operation of the subway roads for which it was organized,

and its gross receipts exclusively from the operation of said roads and by a percentage upon which it is proposed to increase the tax upon the franchise enjoyed in the operation of the elevated railroads, aggregate many million dollars each year.

It seems apparent that there is no particular propriety or justice in compelling a corporation utilizing its corporate franchise to operate an elevated road, aimed at by the statute, to pay as a tax for such enjoyment a percentage not only on its receipts derived from such employment of its franchise but also on its receipts derived from the employment of its franchise in carrying on an entirely distinct and different business, and in respect whereof it is not otherwise subject to assessment under this section.  The application of such a rule even to the facts of this case would produce results which we cannot believe to have been anticipated at the enactment of the statute, and it is easy to imagine how the rule might produce even more inequitable results than would appear here.  A corporation operating very many miles of railroad not elevated might be compelled or deem it advisable to construct a fraction of a mile of elevated road at a terminal or leading to a pleasure resort, and thus on this interpretation become subject to an assessment as the operator of an elevated road measured by its receipts from its entire main road, although the proportion of elevated road to the main road was so insignificant as to render such a result absurd and grossly unjust.

We do not think that the words "from all sources," used in describing the gross receipts made the basis for fixing the amount of the assessment, have a meaning so unqualified and inflexible under all circumstances as the comptroller and the court below have given them.   They should be so interpreted as to carry out what must have been the intention of the legislature.   It was doubtless assumed, and ordinarily would be the case, that a corporation operating an elevated road would not be engaged in operating another road of equal or perhaps superior importance, and that whatever other pro-

jects it carried on would be of minor importance and inci-
dental to and largely comprehended within the scope of its
principal undertaking as the operator of an elevated road.
In such a case it would not be at all unreasonable to make it
pay a tax for the exercise of its franchise in carrying on its
primary and important undertaking which included a per-
centage on its receipts from these secondary and minor
sources which were more or less the results of and dependent
on its main enterprise.   But we think that the intent and
enactment of the legislature should be regarded as limited by
some such just and pertinent boundary as this, and that it was
not the purpose to make the statute so all comprehensive as
to include the receipts from the employment of the franchise
in ways which could in no sense be viewed as merely incidental
to or a result of the operation of the elevated road.

It is also insisted in behalf of the comptroller with perfect
consistency that under the dividend clause of the section in
question, which provides that the franchise tax shall include
a tax of three per cent upon the amount of dividends declared
or paid in excess of four per cent upon " the actual amount
of paid-up capital employed," the relator because operating
an elevated road must pay the tax in question upon all divi-
dends in excess of four per cent declared on its capital exclu-
sively devoted to the equipment, maintenance and operation
of the subway road.   We think on the other hand that rea-
sons analogous to those already set forth in the discussion of
the prior provisions of the statute lead to a different conclu-
sion and that was the view adopted by the Appellate Division
on this question.   The language used in this clause of the
statute is, it must be conceded, somewhat ambiguous and
uncertain, and it is perhaps more difficult to apply it satisfac-
torily to the facts disclosed on this appeal.   But without
repeating at length reasons already stated it does not seem to
us that because of its operation of an elevated railroad the
relator should be assessed for dividends declared upon its
capital invested in the subway roads, and it is claimed on this
argument that all of its capital is so invested and utilized.

If it should be established that a portion of its paid-up capital was employed in the operation of the elevated road there would seem to be some propriety in making dividends of the kind described declared upon such capital so employed subject to the tax in question.

The views which have thus been expressed do not in our judgment lead to the final conclusion that relator, although not assessable in respect to its subway roads under section 185 of the Tax Law, does not come within any of the provisions of the law relating to the assessment of a franchise tax. While that specific question has not been fully discussed on this appeal and, therefore, perhaps should be regarded as subject to further consideration if necessary, we now see no reason to doubt that within sections 182 and 184 of the Tax Law are provisions broad enough to provide for a franchise tax against the relator in respect of its equipment, maintenance and operation of the subway roads.

The order of the Appellate Division should be reversed and the determination of the comptroller annulled, with costs to relator in both courts and a new assessment ordered.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Order reversed, etc.