In the Matter of MERCHANTS REFRIGERATING COMPANY, Appellant, against FRANK J. TAYLOR, as Comptroller of the City of New York, Respondent.

114

Argued May 24, 1937; decided July 13, 1937.

*Clarence J. Shearn* and *Daniel E. Hanlon* for appellant. The assessment of the city sales tax and the city utility tax against the receipts from petitioner's storage business was not authorized by the terms of the laws. (*People ex rel. Studebaker Corp.* v. *Gilchrist*, 244 N. Y. 114; *Gould* v. *Gould*, 245 U. S. 151; *People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51.) While classifications made by the Legislatures for the purpose of taxation have been sustained, such classification must have some basis in reason and cannot be entirely arbitrary. (*Gulf, C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150; *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Iowa-Des Moines Nat. Bank* v. *Bennett*, 284 U. S. 239; *People ex rel. Phillips* v. *Raynes*, 136 App. Div. 417; 198 N. Y. 539; *New York Steam Corp.* v. *City of New York*, 268 N. Y. 137.) To the extent that the utility tax is held to tax petitioner's business, it constitutes a second tax on gross receipts and exceeds the authority granted to the city by the Legislature. (*Matter of Atlas Television Co.*, 273 N. Y. 51.)

*Paul Windels, Corporation Counsel* (*Meyer Bernstein, Oscar S. Cox* and *Frank J. Derrick* of counsel), for respondent. Petitioner's receipts from its cold storage warehouse business constitute taxable receipts within the meaning of Local Laws No. 24 of 1934 and No. 2 of 1935. (*Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84.) No discrimination results from the classification of the appellant's receipts with those of other taxpayers subject to the local laws. (*Carr* v. *West Side Warehouse Co.*, 169 N. Y. Supp. 564; *Sutherland* v. *Albany Cold Storage & Warehouse Co.*, 171 N. Y. 269; *Roberts & Schaefer Co.* v. *Emmerson*, 271 U. S. 50; *Old Dearborn Distributing Co.* v. *Seagram Distillers Corp.*, 299 U. S. 183; *Colgate* v. *Harvey*, 296 U. S. 404; *Radice* v. *New York*, 264 U. S. 292; *Fox* v. *Standard Oil Co. of N. J.*, 294 U. S. 87; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Southern Boulevard R. R. Co.* v. *City of New York*,

86 Fed. Rep. [2d] 633; *Tyler* v. *United States*, 281 U. S. 497; *Karnuth* v. *United States*, 279 U. S. 231; *New York Steam Corp.* v. *City of New York*, 268 N. Y. 137; *Standard Oil Co.* v. *Marysville*, 279 U. S. 582; *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342.) Amounts received from so-called handling charges are receipts from a necessary part of the service appellant renders and were, therefore; properly included in the base of the tax. (*Gee Coal Co.* v. *Department of Finance*, 361 Ill. 293; *State* v. *Menefee Motor Co.*, 18 La. App. 694; *People ex rel. Westchester Lighting Co.* v. *Gaus*, 199 N. Y. 147; *Lash's Products Co.* v. *United States*, 278 U. S. 175.)

CRANE, Ch. J. Appellant seeks to review the determination of the Comptroller of the city of New York taxing it under the Local Laws of the city which impose a sales tax and a tax upon utilities. The Appellate Division has unanimously confirmed the determination of the respondent and dismissed the orders of certiorari. Appeal is taken here by permission of this court.

Appellant operates two storage warehouses in the city of New York which are equipped to permit the refrigeration of its storage chambers. Its property consists of steel and concrete buildings, the walls of which are insulated with cork. Refrigeration machinery and equipment, for the production and circulation of the refrigerating fluids or brine, are installed in the basements. By means of a closed system of pipes the brine leaves the machine, goes through the pipes, reduces the temperature on the premises to be refrigerated and returns by means of pipes to the refrigerating system.

At its warehouses appellant assumes full control over the merchandise delivered to it for storage. Its customers are, for the most part, dealers in perishable commodities. It supplies the labor for hauling merchandise in and out of its building; it selects and furnishes the cooling room in which the goods are placed; it maintains the proper circulation of air around the

packages; and controls the correct degree of humidity. Different commodities require different types of refrigeration service. For all this service rendered, appellant's charges are higher than those of the ordinary warehousemen who do not supply refrigeration. Included in the charges to the customers are the amounts paid for handling of the customers' merchandise on appellant's premises. The handling charges for placing the goods in and bringing them out of storage are made separately and are in addition to the storage charges.

In addition to its warehouse business, appellant furnishes what is called an " off-premises " service. *First,* it furnishes refrigeration to the tenants occupying stores on the ground floor of its Seventeenth street warehouse. From its refrigerating plant in the warehouse, appellant pumps refrigerating fluid through pipes to these stores. It charges the tenants for this service, billing them separately in addition to their rent. *Secondly,* appellant also furnishes refrigeration to some outside premises in the neighborhood of one of its warehouses. These customers enter into yearly contracts with appellant for this service. The refrigeration is furnished by means of pipes under the streets, laid pursuant to a franchise from the city of New York. Appellant contends that the off-premises business does not amount to more than twenty per cent of its gross receipts.

Two separate taxes are imposed upon appellant under two separate local laws. We shall consider each tax separately.

*Sales Tax.* Local Law No. 20 (published as No. 21) of 1934 did not tax sales of refrigeration or refrigerating service. That law was amended by Local Law No. 24 (published as No. 25) of 1934. The amending law provides:

" § 2. Imposition of tax. During the period commencing on December tenth, nineteen hundred and thirty-four, and ending on December thirty-first, nineteen hundred and thirty-five, there shall be paid a tax of two per centum

upon the amount of the receipts from every sale in the city of New York of: * * *

" (b) Gas, electricity, *refrigeration* and steam, *and* gas, electric, *refrigeration,* * * * *service,* for domestic or commercial use."

" Receipts " is defined in section 1 as meaning " the amount of the sale price of any property or the charge for any service " specified " without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service cost, interest or discount paid, or any other expense whatsoever." In section 2 it is also stated that upon each taxable sale or service, the tax to be collected shall be stated and charged separately from the price or charge and shown separately upon any record, and shall be paid by the purchaser to the vendor for and on account of the city of New York. Where the purchaser has failed to pay or the vendor has failed to collect, the tax is payable by the vendor directly to the Comptroller. In section 6 it is provided that each vendor shall pay to the Comptroller the taxes imposed by this local law upon the receipts required to be included in his return. All taxes for the period shall be due from the vendor and payable to the Comptroller " without regard to whether a return is filed or whether the return which is filed correctly shows the amount of receipts and the taxes due thereon."

In *Matter·of Atlas Television Co.* (273 N. Y. 51) this court said: " We might agree with that conclusion if the local law did not contain other provisions which indicate that the obligation imposed upon the vendor is in the nature of a tax. He must file a return of his receipts from sales. (§ 5.) The duty of payment *to the city* is laid upon the vendor, not the purchaser. His liability is not measured by the amount actually collected from the purchaser but by the receipts required to be included in such return. (§ 6.) He must pay the tax even if failure to collect is due to no fault of his own " (p. 57).

Appellant has paid to the city of New York the sales tax on sales of refrigeration service made by appellant through pipe lines under its franchise with the city, and also under its annual written contracts with its lessees. The city has imposed the sales tax upon its refrigeration service to customers within its warehouses for the period from December 10, 1934, to August 31, 1935. Appellant insists that as to its warehouse business, it does not sell refrigeration; that it stores goods and in connection therewith it *uses* refrigeration. In giving substance to this distinction, appellant compares itself to the operators of skating rinks, makers of ice cream, and owners of places air-cooled in summer, and contends that like them it performs a service in connection with which it uses refrigeration. It contends that it no more furnishes a refrigerating service than a turkish bath or a steam laundry furnishes a steam service, or a theatre furnishes a refrigerating service in the hot weather. We agree with the appellant that the cooling of its storage rooms for the preservation of merchandise is not a sale of refrigeration or a sale of refrigeration service within the wording or meaning of this Local Law No. 20 (published as No. 21), as amended by Local Law No. 24 of 1934 (published as No. 25). The temperature may attract customers and increase the charge but safe storage is the service sought and paid for.

*Utility Tax.* Local Law No. 21 (published as No. 22) of 1934 was amended by Local Law No. 2 of 1935 so as to include within its purview a utility furnishing refrigerating service. The amended law provides: " 1. (e) The word ' utility ' shall be deemed to refer to and mean any person subject to the supervision of either division of the department of public service, and every person whether or not such person is subject to such supervision who shall engage in the business of furnishing or selling to other persons gas, electricity, steam, water, refrigeration, telephony and/or telegraphy or who shall engage in the business of furnishing or selling to other

persons gas, electric, steam, water, *refrigeration*, telephone or telegraph service."

Section 2 of the Local Law provides: " Notwithstanding any other provision of law to the contrary, for the privilege of exercising its franchise or franchises, or of holding property, or of doing business in the city of New York, during the calendar year nineteen hundred thirty-five, or any part thereof, every utility doing business in the city of New York and subject to the supervision of either division of the department of public service, * * * and every other utility doing business in the city of New York shall pay to the comptroller of the city of New York an excise tax which shall be equal to three per centum of its gross operating income for the calendar year nineteen hundred thirty-five. Such tax shall be in addition to any and all other taxes and fees imposed by any other provision of law * * *."

Under section 1, subdivision (d), the " gross operating income " shall be deemed to refer to and include receipts received by reason of any sale made or service rendered of the property and services specified " without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or services or other costs, interest or discount paid, or any other expenses whatsoever."

The city has subjected the appellant's entire refrigeration business — storage and all — to this utility tax. If the construction of the statute urged by the city is adopted, the statute is unconstitutional as arbitrary and discriminatory — unreasonable.

In *New York Steam Corp.* v. *City of New York* (268 N. Y. 137) this court had before it an earlier local law of the city of New York (Local Law No. 19 of 1933) imposing a tax upon public utilities. That law did not include refrigeration services, and imposed a tax upon persons subject to the supervision of either division of the Public Service Commission. It was attacked as an

unconstitutional discrimination, depriving the utility of equal protection of the law. This court sustained the law, saying: " In our opinion reasons justifying that separation are apparent. Plaintiff is one of a group — those subject to supervision by the Public Service Commission — that, because of the public service nature of their respective businesses, are accorded a degree of protection against competition and other advantages over the general business community. This common character of the group is, we think, a valid basis of classification for the purposes of this tax " (p. 147).

Appellant maintains that its inclusion in the classification is arbitrary because it possesses none of the common characteristics of the other utilities; that it is accorded no degree of protection against competition; is not under the supervision of the Public Service Commission; and has no advantages over the general business of the community. Appellant has only one advantage conferred on it by the city, namely, as to its off-premises service supplied to nearby properties, it is permitted by the city to lay its pipes in the street.

In *Colgate* v. *Harvey* (296 U. S. 404) the United States Supreme Court said: " It is settled beyond the admissibility of further inquiry that the equal protection clause of the Fourteenth Amendment does not preclude the states from resorting to classification for the purposes of legislation. *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415. And ' the power of the state to classify for purposes of taxation is of wide range and flexibility * * *. *Louisville Gas Co.* v. *Coleman,* 227 U. S. 32, 37. But the classification ' must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike ' * * * The classification, in order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as dis-

tinguished from irrelevant and artificial ones. The test to be applied in such cases as the present one is — does the statute arbitrarily and without genuine reason impose a burden upon one group of taxpayers from which it exempts another group, both of them occupying substantially the same relation toward the subject matter of the legislation? ' Mere difference is not enough. * * * ' *Louisville Gas Co.* v. *Coleman, supra; Frost* v. *Corporation Commission,* 278 U. S. 515, 522 " (p. 422).

In *New York Steam Corp.* v. *City of New York (supra)* this court said: " It is not asserted that the Fourteenth Amendment forbids selection among businesses for subjection to a State excise tax, if determined by some reasonable policy of differentiation, and all in the same class have equality " (p. 146).

It was said by this court in *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8, 21, 22): " The rule governing the subject, as laid down by the Supreme Court of the United States, is that there must be ' some difference which bears a reasonable and proper relation to the attempted classification.' It cannot be ' mere arbitrary selection.' * * * By this we do not understand that great court to mean that the relation must necessarily be ' reasonable and proper ' according to the judgment of reviewing judges, but that the court must be able to see that legislators could regard it as reasonable and proper without doing violence to common sense. In other words, there must be enough reason for it to support an argument, even if the reason is unsound. At all events that is as far as it is necessary for us to go in this case, where no reason whatever can be seen for selecting certain individuals of a class and taxing them more heavily than others in the same situation." This case was later overruled, but for other reasons (*Vaughan* v. *State of New York,* 272 N. Y. 102).

Passing for a moment the franchise granted by the city to use its streets, what reason exists for including appellant in the class of those upon whom the tax falls?

The city answers that the method, character and nature of appellant's business are sufficiently different from those of general non-refrigerated warehouses to justify difference in treatment for purposes of taxation. Different they, of course, are. Even so, I apprehend that a tax imposed only on warehousemen generally would offend the Constitution as much as one imposed only on cold storage warehousemen. A second reason is suggested in that those engaged in rendering the service specified in the local law benefit substantially from money made available for unemployment relief as such services are necessary and essential to modern life; that they benefit materially from the improvement in business. To the same extent would a food merchant, a clothing merchant — in fact, every business man in general. The reasons advanced by the city in support of the classification do not indicate a difference between appellant and other businesses not taxed which bears any reasonable relation to the attempted classification. Most of those utilities included within the classification have common characteristics that differentiate them from business in general. The classification was, as to them, held reasonable. Appellant does not share that common characteristic. No reason appears why appellant should be included within the incidence of the tax, while business in general was exempted.

As stated above, appellant furnished refrigeration to persons outside its building by means of pipes laid in the streets under a franchise from the city. This constitutes but a small proportion of appellant's business but justifies, nevertheless, the utility tax upon this part of its income. The gross operating income from these franchised sales must and can be taxed under this Local Law No. 2 of 1935.

A third objection is made by appellant to the imposition of these taxes. The statute which conferred authority on the city to enact these local laws is chapter 873 of the

Laws of 1934. That act reads: " Provided, however, that nothing herein contained shall limit or prevent the imposition of a tax on gross income or a tax on gross receipts of persons, firms and corporations doing business in any such city. No such person, firm or corporation, however, shall be subject to the imposition of more than one tax by any such city on gross income or gross receipts under the provisions of this act " (§ 1).

Appellant contends that it is twice taxed on its gross receipts, once by the sales tax, and once by the utility tax. As pointed out by the city, the sales tax falls upon the purchaser while the utility tax falls upon the utility itself. The *Atlas Television* case (273 N. Y. 51) did not hold that the sales tax is imposed on the vendor, but only that he is under a duty to pay the tax to the city regardless of whether or not the vendor collects it from the purchaser.

This point was not raised in the *New York Steam Corporation* case. There the action was begun February 1, 1934, and it attacked Local Law No. 19 of 1933, adopted pursuant to authority conferred by chapter 815, Laws of 1933. The Sales Tax Law was not adopted until 1934, to take effect in December of that year.

For the reasons here stated the order of the Appellate Division should be reversed and the matter remitted to the Special Term to proceed in accordance with this opinion, with costs to the appellant in all courts.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.