Cohn, J.
This is a proceeding under article 78 of the Civil Practice Act to review a final determination of the Comptroller of the City of New York assessing New York City utility taxes for the five-year period from July 1, 1938, to June 30, 1943, against petitioner, United Parcel Service of New York, Inc. (hereinafter referred to as “ United Parcel ”). The tax assessed amounts to $169,541.03 plus penalties and interest to February 25, 1945, in the sum of $87,563.29. It was levied in March, 1946, at the rate of 1% upon United Parcel’s gross income from delivery operations wholly within New York City for the five years beginning July 1,1938.
The determination was made pursuant to Local Laws of the City of New York, to wit: No. 22 of 1938, No. 104 of 1939, No. 80 of 1940, No. 49 of 1941 and No. 29 of 1942, imposing New York City utility taxes during the period. These local laws are incorporated in title Q of chapter 41 of the Administrative Code of the City of New York. The authority to enact the five city utility tax laws was delegated to New York City by a corresponding series of five annual enabling acts, specially applicable to the City of New York, passed by the State Legislature (L. 1938, ch. 444; L. 1939, ch. 659; L. 1940, ch. 245; L. 1941, ch. 200; L. 1942, ch. 244).
The city utility tax law imposes on every utility doing business in the City of New York a tax of 1% of gross income (Administrative Code, § Q41-2.0, subd. a). A “ utility ” is defined to include “ Every person subject to the supervision of * * * the department of public service ” (§ Q41-1.0, subd. 6) and every person whether or not subject to such supervision who furnishes or sells gas, electricity, steam, water, refrigeration, telephony and/or telegraphy, (subd. 7.)
Petitioner is engaged in the business of operating under contract the delivery departments for about two hundred customers selling general merchandise in department stores, located within the New York City commercial zone, elsewhere in New York State, and in northern New Jersey. The New York City commercial zone embraces New York City and certain contiguous municipalities in Nassau and Westchester Counties, as defined by the *197 Public Service Commission. In the conduct of its business, petitioner operates trucks as a contract carrier and sixteen package delivery stations in the State of New York, thirteen of which are located within the New York City commercial zone. If petitioner’s deliveries were confined to New York City limits, there could be no utility tax, for the Public Service Law (Art. 3-B, § 63-i, subd. 3, par [e]; L. 1938, ch. 543) exempts from the Public Service jurisdiction, all transportation of property wholly within a municipality or a municipal commercial zone; such service apparently is not regarded as a utility service.
Certain of United Parcel’s delivery operations, however, involve the contract transportation of merchandise (a) between points within the New York City commercial zone or other municipalities and points in New York State outside such commercial zone and municipal limits, and (b) between points in New York State, outside the New York City commercial zone and outside the limits of other municipalities. The delivery operations of such out-of-the-city transportation produce only 7% of the total gross income of United Parcel. The out-of-the-city transportation has since 1938 been subject to limited regulation by the Department of Public Service (Public Service Law, art. 3-B; L. 1938, ch. 543). Petitioner is accordingly classed as a “ utility ” under the definition of that term as set forth in the city utility tax law (Administrative Code, § Q41-1.0).
The transportation or other activities of petitioner largely confined to the New York City commercial zone and embracing 93% of its gross income, are not in any way subject to the supervision of the Department of Public Service. With respect to its delivery operations confined to New York City, United Parcel is engaged in the same business as several hundred other contract carriers. Such competitors are not required to pay a' utility tax because they have no out-of-the-city deliveries subject to regulation by the Department of Public Service.
For the five years involved United Parcel duly paid on gross receipts from its New York City operations the business gross receipts tax imposed on all nonutilities, which aggregated $18,647.37. That sum was admittedly the full tax payable on United Parcel’s nonutility New York City operations, unless United Parcel can be classified as a utility and taxed as such.
The question presented is whether petitioner is a utility subject to tax under the city utility tax law and whether it is proper *198 to use as the base of that tax petitioner’s income from its sales made and services rendered wholly within the city of New York.
The city contends that petitioner, a person subject to the supervision of the Department of Public Service and doing business in the city, may be taxed as a utility under the city utility tax law, and that the tax may properly be measured by petitioner’s receipts from sales made and services rendered wholly within the city.
Petitioner claims that merely because a part of its service is supervised by the department of Public Service, such fact does not make it subject to the city utility tax with respect to receipts from operations wholly within the city which are not so supervised.
It is well established that all ambiguities in a taxing statute must be interpreted in favor of the taxpayer. (People ex rel. Mutual Trust Co. v. Miller, 177 N. Y. 51, 57; People ex rel. New York Mail & Newspaper Transportation Co. v. Gaus, 198 N. Y. 250, 255; Matter of Good Humor Corporation v. McGoldrick, 289 N. Y. 452, 455; Matter of Brooklyn Union Gas Co. v. McGoldrich, 270 App. Div. 186, 195.)
The city utility tax laws respectively in effect during each of the five years involved are quite similar. Proper construction of their language may be ascertained by a reference to the 1940 law, which so far as pertinent, is typical of the other four local laws in force during the period from 1938 to 1943. That statute (Local Laws, 1940 No. 80 of the City of New York) imposed a franchise or doing business tax of 1% on the gross income of “ every utility doing business in the city ”. Every person or corporation subject to the supervision of the department of public service was included in the definition of a “ utility ”. Cross income included all receipts “ received in or by reason of any sale made * * * or service rendered in the city ”. The only utilities taxable were utilities “ doing business in the city ”. That obviously means doing business as a utility in the city. The gross income on which the tax is imposed must come from sales made or services rendered “ in the city ”. Furthermore, in an explanatory clause, the tax is described as covering the privileges of exercising a franchise or franchises, or of holding property, or of doing business, “ in the city” (Administrative Code, § Q41-2.0; Local Laws, 1940, No. 80 of the City of New York).
The purpose of such local laws is clear. For the privilege of exercising a utility franchise in New York City, a utility doing business as such in New York City is required to pay a tax of *199 1% of its gross income from sales made and services rendered in the city. The utility laws were not enacted to impose a utility tax on the nonutility income of a nonutility doing business as such in the city.
Moreover, it was not the intent of the State Legislature to impose a utility tax on a contract motor carrier such as United Parcel. Article 3-B of the Public Service Law as already pointed out, subjected motor carriers for the first time to the jurisdiction of the Department of Public Service and thus brought them within the definition of a utility under the city utility laws. But, the jurisdiction of the Department of Public Service over United Parcel was limited by that statute; for all operations of United Parcel originating and terminating within the New York City commercial zone were exempted from regulation (art. 3-B, § 63-i, subd. 3, par. [c]). Peculiarly enough it is the gross income from such exempt operations which the city has sought to tax at the utility rate.
If article 3-B had been enacted without more, the out-of-the-city operations of United Parcel might have become subject to the State utility tax under section 186-a of the Tax Law. However, that result was not intended because by chapter 710 of the Laws of 1938 contemporaneously passed, section 186-a of the Tax Law was amended so as to exclude all motor carriers from utility taxation. The obvious purpose of article 3-B was to regulate motor carriers to the limited extent heretofore outlined and not to tax them.
New York City utilities enjoying special privileges from New York City are required to pay the high rate of tax on the gross income earned here through the exercise of such special privileges. It was never intended, as the comptroller has held, that a motor carrier like United Parcel, doing an ordinary nonutility business and enjoying no utility privileges from the city, should be taxed at the high utility rate — on the theory that United Parcel in its entirety can be called a utility just because a small segment of its business — and a nontaxable segment — was made subject to Public Service jurisdiction. Similar attempts, by literal construction of words, to impose a tax when clearly such was not the intention of the Legislature have been repeatedly rejected (People ex rel. Interborough Rapid Transit Co. v. Williams, 200 N. Y. 93; Merchants Refrigerating Co. v. Taylor, 275 N. Y. 113; Dun & Bradstreet, Inc., v. City of New York, 276 N. Y. 198, 204; Matter of Holmes Electric Protective Co. v. McGoldrick, 262 App. Div. 514, 520, affd. 288 N. Y. 635).
*200 In People ex rel. Interborough Rapid Transit Co. v. Williams {supra) the State sought to treat the Interborough Rapid Transit Company, which was a subway company, as an elevated railroad in its entirety for the purpose of imposing an elevated railroad tax on subway income because the company had leased an elevated railroad system. The statute there involved (Tax Law, § 185) provided that every corporation which owned or operated any elevated railroad was to pay to the State a utility franchise tax of 1% upon its gross earnings “ from all sources within this state.” Such elevated operation produced over half of the subway company’s gross income. Under a literal interpretation of the statute, subway revenue was clearly included within the phrase “ gross earnings from all sources.” (Emphasis ours.) In rejecting the interpretation claimed by the State Comptroller, the court said (at p. 103): “It seems apparent that there is no particular propriety or justice in compelling a corporation utilizing its corporate franchise to operate an elevated road, aimed at by the statute, to pay as a tax for such enjoyment a percentage not only on its receipts derived from such employment of its franchise but also on its receipts derived from the employment of its franchise in carrying oil an entirely distinct and different business, and in respect whereof it is not otherwise subject to assessment under this section. The application of such a rule even to the facts of this case ivould produce results which we cannot believe to have been anticipated at the enactment of the statute, and it is easy to imagine how the rule might produce even more inequitable results than would appear here. A corporation operating very many miles of railroad not elevated might be compelled or deem it advisable to construct a fraction of a mile of elevated road at a terminal or leading to a pleasure resort, and thus on this interpretation become subject to an assessment as the operator of an elevated road measured by its receipts from its entire main road, although the proportion of elevated road to the main road was so insignificant as to render such a result absurd and grossly unjust.”
In the case before us, the special city enabling acts, the city utility laws and section 20-b of the General City Law contain provisions whereby transactions “ originating or consummated outside of the territorial limits ’ ’ of the city are exempted from taxation. It does not make sense to say that such an activity which itself is exempt from utility taxation should have the effect of subjecting to utility taxation the nonutility income which by itself is also exempt.
*201 In Merchants Refrigerating Co. v. Taylor (275 N. Y. 113, supra) the Court of Appeals held that it would be an arbitrary classification to tax the income from storage warehouse service at utility rates merely because the company was a utility with respect to a small proportion of its business. So, too, in Matter of 320 West 37th Street, Inc., v. McGoldrick (281 N. Y. 132) the court refused to consider a taxpayer who was submetering electricity for his tenants as engaged in the public utility business as commonly understood. It was not until the local law was amended so as to apply to “ vendors of utility services ” that a utility tax against such landlords was sustained (Matter of 436 W. 34th St. Corp. v. McGoldrick, 288 N. Y. 346, 348). Again, in Matter of Holmes Electric Protective Co. v. McGoldrick (262 App. Div. 514, affd. 288 N. Y. 635, supra) the city sought to tax the Holmes Protective service as a utility on the theory that it was engaged in the business of selling telephone and telegraph services. The court, however, held that the use of telephony and telegraphy was merely incidental to the sale of protective service and that the company should therefore have been exempted from payment of the utility tax, as the company was not in fact a utility.
These cases demonstrate that where literal construction of a statute will produce an unjust result the dictates of propriety and justice will be used as guides to the true legislative intent. “ In statutory construction the courts endeavor to give effect to the legislative intent. In the absence of language so clear that it allows no room for construction, the courts will not ascribe to the Legislature an intention which is contrary to general and well-established rules of justice and fairness * * (Lehman, J., Sharkey v. Thurston, 268 N. Y. 123, 127; see, also, Osborne v. International Ry. Co., 226 N. Y. 421, 425-426; Travis v. American Cities Co., 192 App. Div. 16, 27, affd. 233 N. Y. 510.)
We have reached the conclusion that the language of the city utility tax laws must be so interpreted as to carry out what was obviously the intent of the city and State legislative bodies, namely, to subject to city utility taxation only real utilities doing business as such within the city of New York. The petitioner does not come within such classification.
The determination of the comptroller should be annulled, with $50 costs and disbursements to the petitioner and an order should be entered directing a refund to petitioner of the tax, penalties and interest in the amount of $257,104.32, together with interest thereon from April 8,1946. .
Mastín, P. J., Glennon, Dobe and Peok, JJ., concur»
*202 Determination unanimously annulled, with $50 costs and disbursements to the petitioner and a refund directed to petitioner of the tax, penalties and interest in the amount of $257,104.32, together with interest thereon from April 8, 1946. Settle order on notice.