Fuchsberg, J. (dissenting).
The question here, I think, is not whether a statute establishing an administrative method of adjudicating traffic violations is valid. Providing the essentials of due process are maintained, I agree it can be. The issue, as I see it, is a much narrower one. May the fundamental requirement for proof of guilt beyond a reasonable doubt be discarded as a pure ‘ ‘ incident ’ ’ to such an enactment, even though its discard contributes nothing at all to the speed, economy, efficiency or other boons adjudication tribunals are to bring?
It is undisputed that, until the enactment of the legislation here found unconstitutional by our State Supreme Court, traffic law violators were accorded the safeguards generally applicable to criminal proceedings. (People v. Phinney, 22 N Y 2d 288, 290; People v. Firth, 3 N Y 2d 472; cf. Penal Law, § 10.00, subd. 2.)
Surely, among the dearest of such safeguards, on a level with the presumption of innocence, is the requirement of proof beyond a reasonable doubt. (See People v. Hildebrandt, 308 *276 N. Y. 397, 400.) The United States Supreme Court explicitly removed ‘ ‘ any doulbt aibout the constitutional stature of. the reasonable-doubt .standard ”. (In re Winship, 397 U. S. 358, 364.)
It is not denied that we have the right, indeed the duty, to examine the constitutionality of legislation which would shelve so important a" right. One of the standards all legislation must meet is that of rationality. Purposeless legislation can be oppressive legislation. It is not crucial that we agree with the wisdom of a statutory provision, or with its necessity, or that we think the result it seeks is desirable, or even that we regard the means it would employ as the best ones to accomplish that result but the existence of a rational connection between the part of the statute under consideration and what it is designed to accomplish is a sine qua non of due process. (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537.)
The portion of the statute under attack here does not meet that test. Not even time saving can be claimed for it. It takes no longer for an adjudicator or a Judge, as the case may be, to use the measuring rod of ‘ ‘ beyond a reasonable doubt ’ ’ rather than that of “ clear and convincing proof ”. Whichever of these standards is employed, the proof presented would no doubt be identical. (Force, Administrative Adjudication of Traffic Violations Confronts the Doctrine of Separation of Powers, 49 Tulane L. Rev. 85, 125.) .Nor has anyone as much as suggested that motorists with a penchant or compulsion to speed will be a whit more inclined to do so because a less stringent criterion for guilt is introduced.
The use of one standard rather than another is not a mere matter of ceremony or of semantics. We live by our ideals, and conscientious fact finders, however denominated, can be expected to be sensitive to their obligations to respect the rule of reasonable doubt, or to ignore it, as the law may require. And just as the value of taking an oath is not to be denigrated because it is no guarantee of veracity (cf. Matter of Brown v. Ristich, 36 N Y 2d 183), so can consciousness of our credos act as an antidote to the dissipation of the quality of life in general and of justice in particular, in the present case against a more casual standard for a penhl determination.
*277 The majority suggests that the elimination of the possibility of imprisonment makes a lower standard of proof more acceptable. Regrettably, I find it necessary to disagree, all the more so because one does not appear to be reasonably related to the other.
Subdivision 1 of section 10.00 of the Penal Law, defining an “ offense ”, the category in which traffic violations are now classified (see Penal Law, § 10.00, subd. 2), specifically includes “ conduct for which a sentence to a term of imprisonment or to a fine is provided'by any law” (emphasis added). Fines for speeding, the offense involved in this case, can be as high as $500. A defendant’s driving privileges, on which one’s mobility in today’s society may be utterly dependent, and which is a privilege protected by due process (see Bell v. Burson, 402 U. iS. 535, 539), may be forfeit. It even has been held that conviction for an offense may be the basis for a legal assault upon one’s reputation (see People v. Gray, 41 A D 2d 125, affd 34 N Y 2d 903; cf. People v. Sandoval, 34 N Y 2d 371, 377; but see Vehicle and Traffic Law, § 155), certainly a matter to be coveted above mere material considerations. These penalties, far more than the tiny incidence of brief jailings for speeding violations, are the jeopardies at stake. (See People v. Phinney, 22 N Y 2d 288, supra.) In any event, even a “civil label” and even “good intentions ”, would not dilute the constitutional mandate. ( In re Winship, 397 U. S. 358, supra.)
Nor do Í believe it relevant that administrative agencies do not apply the reasonable doubt standard. The comparison falls short because such agencies have had an historical development separate and apart from our courts and, therefore, did not automatically adopt the proved values of the common law, a thing to be regretted rather than emulated. Nor does the fact that the bureaucratic needs of such agencies do indeed cause them to. “ routinely impose civil fines and penalties on lesser standards ” justify our diluting the higher standards in areas that have heretofore been safe from such intrusion.
Also, if we allow the “ incidental ” casting aside of the reasonable doubt standard, are we not opening the door to the frittering away of other fundamental rights as well? Advocates of the removal of the right of confrontation, or of cross-examination, in such instances at least would be able to argue that *278 such measures might very well shorten hearings. And who could gainsay that speeding violations could be dealt with even more expeditiously if the need to make out a prima facie case was dispensed with altogether by presuming guilt and casting the burden of proving innocence on defendants?
The lack of rationality behind that part of the statute before us which would eliminate the reasonable doubt standard also produces an overflow imposing on equal protection. “ ‘ [T]he equal protection clause * * * does not preclude the states from resorting to classification for the purposes of legislation * * * But the classification “must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation ” ’ ”. (Merchants Refrig. Co. v. Taylor, 275 N. Y. 113, 121.) For example, in the present case, there is nothing to indicate that speeding offenses are proportionately more prevalent in our jammed urban centers,* where more often than not motor vehicles have to move at a snail’s pace, than in our rural and suburban areas, traversed as they are by the open road or the express highway. It is, then, paradoxical that the lessened standard for speeding convictions is to be applied only in large urban areas, while reserving the jail threat for rural travelers.
Thus, in Commissioner of Public Welfare (Martinez) v. Torres (263 App. Div. 19), the First Department, finding no rational basis for a classification, struck down a statute requiring corroboration for certain defendants’ testimony in paternity proceedings brought in New York City but not elsewhere in the State. The reasoning in that case is equally applicable here. Missouri v. Lewis (101 U. S. 22), cited in Torres and relied on by the majority, does not hold to the contrary. That case upheld a classification providing for a two-tier system of appeal courts in metropolitan 'St. Louis and a single, direct appeal to the Missouri Supreme Court in the rest of that State. Significantly, however, it was not even remotely hinted that any of the appellate courts within the Missouri court organization structure may apply a different requirement as to the standard of proof for finding of guilt in one part of that State than in the other.
*279 Salsburg v. Maryland (346 U. S. 545), ¡which upheld a statute permitting the admission of evidence, though illegally obtained, in one highly urbanized part of that State alone, was decided long before Mapp v. Ohio (367 U. S. 643) established that the protections of the Fourth Amendment of the Federal Constitution are applicable to State courts and, therefore, did not involve a then recognized due process right. Yet, despite the fact that the Supreme Court, therefore, viewed the case as involving only “ Rules of evidence, being procedural in their nature, [which] are purely discretionary with the law-making authority ” (Salsburg, supra, p. 550), it made careful note of the fact that Maryland’s Attorney-General had shown the existence of a rational basis for the classification arising out of an unusually high incidence of illegal .gambling in the area involved, a problem with which the Legislature of that State apparently thought it wise to deal with by placing less restraint on law enforcement officials. A fortiori, a rational base was all the more essential in the case before us, where an admittedly important right is at stake.
Our task here is made easier because the statutory scheme here involved would not be disrupted or even disturbed if the elimination of the reasonable doubt standard were invalidated. That provision and the rest of the statute, far from being inextricably interwoven, are readily separable. Under such circumstances, courts will save the rest of a statute though a part must fall, particularly where the legislative purpose, here an expedient means of trying traffic violations, can be carried out just as well despite the severance. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.)
Accordingly, especially in the absence of a showing of any permissible objective, I would find subdivision 1 of section 227 of the Vehicle and Traffic Law, the statute here involved, to the extent that the second sentence thereof permits the establishment of a charge by less than the reasonable doubt standard, to be unconstitutional, would modify the order below accordingly and would remand the matter for further proceedings consistent therewith.
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Jones; Judge Wachtler dissents and votes to affirm *280 in a separate opinion in which Judge Cooke concurs; Judge Fuchsberg dissents in part and votes to modify in another opinion.
Judgment reversed, with costs, the administrative determination reinstated and petition dismissed.

 Article 2-A of the Vehicle and Traffic Law applies only to the cities of Buffalo, New York and Rochester.