In the Matter of FIFTH AVENUE BUILDING COMPANY, Appellant, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

Argued January 14, 1948; decided April 22, 1948

*Ezra P. Prentice* and *William H. Crawford* for appellant. I. The delivery of the coal was made and the transaction was consummated in West Virginia. (*Matter of Sears, Roebuck & Co.* v. *McGoldrick*, 279 N. Y. 184; *Amtorg Trading Corp.* v. *Higgins*, 150 F. 2d 536.) II. No sales tax is due for the period from April 1, 1937, to December 31, 1942. (*Matter of Gunther's Sons* v. *McGoldrick*, 279 N. Y. 148; *Adams Mfg. Co.* v. *Storen*, 304 U. S. 307; *American Mfg. Co.* v. *St. Louis*, 250 U. S. 459; *Matter of United Artists Corp.* v. *Taylor*, 273 N. Y. 334; *Cheney Bros. Co.* v. *State of Massachusetts*, 246 U. S. 147; *Matter of Nat.*

*Cash Register Co.* v. *Taylor,* 276 N. Y. 208; *Matter of West Pub. Co.* v. *Taylor,* 276 N. Y. 535; *McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33; *McLeod* v. *Dilworth Co.,* 322 U. S. 327.) III. The sales taxes from December 10, 1934, to June 30, 1940, have been paid and cannot be collected again.

*John P. McGrath, Corporation Counsel (Solomon Portnow, Isaac C. Donner* and *Harry Katz* of counsel), for respondent. I. Transfer of possession of the coal purchased by petitioner took place wholly within the city of New York, and the agreements for the purchase of the coal were made and wholly executed within the city. Hence, the transactions here involved are taxable sales under the city sales tax law. The tax is valid under the commerce clause of the Federal Constitution and under the enabling act since it is based upon wholly local taxable incidents. (*Matter of United Autographic Register Co.* v. *McGoldrick,* 260 App. Div. 157, 285 N. Y. 531; *Wiloil Corp.* v. *State of Pennsylvania,* 294 U. S. 169; *Banker Bros.* v. *State of Pennsylvania,* 222 U. S. 210; *Matter of Sears, Roebuck & Co.* v. *McGoldrick,* 279 N. Y. 184; *Matter of Gunther's Sons* v. *McGoldrick,* 279 N. Y. 148; *Matter of United Artists Corp.* v. *Taylor,* 273 N. Y. 334; *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33; *McGoldrick* v. *Felt & Tarrant Mfg. Co.,* 309 U. S. 70; *Jagels, "A Fuel Corporation"* v. *Taylor,* 309 U. S. 619.) II. Under any circumstances, petitioner's purchases of coal for the period January 1, 1935, to June 30, 1940, would be taxable under the city personal property tax law, since coal falls within the taxable category, " oil, gas, gasoline and other combustibles ", specifically subject to tax under that law. (*Matter of Bush Term. Co.,* 93 F. 2d 659.) III. In arriving at the final determination of the tax under review, the comptroller gave petitioner full credit for the tax payments made by petitioner to its vendor in the sum of $1,431.40. IV. Since it appears that petitioner paid neither city sales tax nor city personal property tax on its taxable purchases for the period April 1, 1937, to June 30, 1940, it is liable for the tax assessed. (*Matter of Merchants Refrigerating Co.* v. *Taylor,* 275 N. Y. 113; *Matter of Kesbec, Inc.,* v. *McGoldrick,* 278 N. Y. 293; *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33; *Henneford* v. *Silas Mason Co.,* 300 U. S. 577.)

FULD, J. In this proceeding brought under article 78 of the Civil Practice Act, petitioner disputes the determination of the comptroller of the City of New York that it is liable for sales taxes on its purchases of coal from Consolidation Coal Company between December 10, 1934, and December 31, 1942. Petitioner contends (1) that the transactions were not subject to the New York City sales tax laws and (2) that, in any event, if they were, the city may not collect taxes on the sales up to June 30, 1940, for the reason that they have already been paid to the city by the vendor.

Petitioner, a New York corporation, purchased coal over a period of years from Consolidation, a Delaware corporation, through the latter's New York City sales office for use in its building on Fifth Avenue. The purchases were made pursuant to several contracts, all negotiated and executed in New York City, and each explicitly providing that it was subject to acceptance by the seller '' in New York, New York.'' The city addresses of both parties were specified in the agreements as the places to which written notices were to be sent, and no modification, it was recited, was to be effected unless approved by the seller at its local office. The vendor in the first instance paid all shipping charges and received all shipping documents from the carriers. Those documents called for shipment, under the vendor's direction, by rail and by barge from its mines in West Virginia to petitioner at a pier in New York City. It was at that point that petitioner, through its truckmen, first came into contact with the merchandise. Invoices were rendered by the vendor's New York City office, and it was to that place that petitioner, at the other's request, made payments as it received the coal.

A provision added to the contracts in effect after April 1, 1937, called for shipment f.o.b. the vendor's mines in West Virginia, but that insertion occasioned no change whatsoever in the course of dealings between the parties or in the mechanics of shipment or delivery. Throughout the entire period, after that date just as before, the purchases were completed and consummated by the delivery of the coal in New York City to a city purchaser for use in its city building on orders previously taken in the city. In an unbroken chain, every step of the dealings between petitioner and its vendor — from inception of

negotiations to the final act of payment — was had and taken within New York. It follows, therefore, that taxable transactions were consummated in that city (Administrative Code of City of New York, § N41–1.0), and neither the limitations of the State Enabling Act (*Matter of United Autographic Register Co.* v. *McGoldrick*, 285 N. Y. 531, affg. 260 App. Div. 157) nor the provisions of the commerce clause of the Federal Constitution (*McGoldrick* v. *Felt & Tarrant Mfg. Co.*, 309 U. S. 70; *McGoldrick* v. *DuGrenier, Inc.*, 309 U. S. 70, 77, decided with the *Felt & Tarrant* case; see, also, *McGoldrick* v. *Berwind-White Co.*, 309 U. S. 33; *McLeod* v. *Dilworth Co.*, 322 U. S. 327) forbid or prevent imposition of the local sales tax.

We turn, then, to petitioner's liability for such taxes.

Petitioner paid the taxes on sales between December 10, 1934, and March 31, 1937, to its vendor, but paid none after that time upon the ground that the f.o.b. provision, then newly inserted in the contracts, rendered the transactions nontaxable. The vendor did not turn over to the city the taxes which it had collected from petitioner and did not itself pay the city the taxes which accrued thereafter. However, in 1943, following an audit of the coal company's books, the city required that the vendor pay to it all taxes — with interest and penalties — on all sales made for the period from December 10, 1934, to June 30, 1940. Some time later, the comptroller, crediting petitioner only with payments which it had made to its vendor, assessed petitioner for the entire period from December 10, 1934, to December 31, 1942, in spite of the fact that the city had already collected a large part of those taxes from the vendor. Petitioner deposited the amount assessed against it — the sum of $2,051.57 — with the city treasurer.

Since the city received no sales taxes on sales made between July 1, 1940, and December 31, 1942, petitioner must pay the tax deficiency for that period. Not so, however, those taxes which the vendor has already paid to the city for sales made between 1934 and June 30, 1940.

The local laws here involved, designed to assure the municipality additional revenue, empowered the city to tax receipts from the sale of tangible personal property within its jurisdiction. However, once the tax on a particular sale has been paid to the city, the city's interest and authority — insofar as

the collection of such a tax is concerned — are at an end; once the city has collected a tax, it has received all of the revenue to which it is entitled on that transaction. Nothing in the statute, either explicitly or impliedly, authorizes collection of the tax from the purchaser after the vendor has paid it.

Certainly, nothing contained in subdivision f of section N41-2.0 of the Administrative Code — to the effect that " Where the purchaser has failed to pay and a vendor has failed to collect a tax upon a sale * * * such tax shall be payable by the purchaser directly to the treasurer " — justifies double payment or collection. As we read that paragraph, it merely calls upon the purchaser to pay the city in a case where the city has not previously been paid and the vendor has not previously collected from the purchaser. Statements that the city may collect from a purchaser if he has not paid the tax to the vendor (see, e.g., *City of New York* v. *Feiring,* 313 U. S. 283, 287) manifestly envisage only a case where the city was not already paid by the vendor. A contrary construction — that the purchaser must pay the city even though it has already been paid by the vendor — would, indeed, take from the latter the right to sue his purchaser, a right expressly given by subdivision e, for it is inconceivable that the purchaser, after having been compelled to pay the city, would be subject to further suit by the vendor.

Analysis of subdivision g fortifies our conclusion that the city is given a right to collect but a single tax on a single sale, from either vendor or purchaser. That paragraph provides that the comptroller may require the purchaser to pay the tax directly to the city instead of to the vendor, and, significantly, at the very time when the vendor would ordinarily pay. This alternative collection procedure stems from the alternative nature of the liability, for vendors (see *Matter of Atlas Television Co.,* 273 N. Y. 51; *City of New York* v. *Feiring, supra*) as well as purchasers (*Matter of Merchants Refrigerating Co.* v. *Taylor,* 275 N. Y. 113; *Matter of Kesbec, Inc.,* v. *McGoldrick,* 278 N. Y. 293) are to be deemed taxpayers under this legislation, and the duty to pay is " in the alternative ". (See *City of New York* v. *Feiring, supra,* p. 287; *United States* v. *State of New York,* 315 U. S. 510, 514.)

Granting the city a double tax recovery on a single sale — unless and until the vendor actually recoups its payment by suit — will not, in our view, effectuate any supposed policy against allowing the vendor to absorb the sales tax. The incidence of the tax was designed to fall upon the purchaser (see *Matter of Atlas Television Co., supra,* p. 58), and it was probably desired that the purchaser be made aware of that fact. Those ends were sought to be assured, however, by provisions which subject a vendor to prosecution for a misdemeanor and to imposition of other penalties (1) if he willfully fails or refuses to collect the tax from the purchaser or (2) if he willfully fails to charge separately from the sales price the tax imposed or (3) if he willfully fails to state such tax separately from the selling price or service charge (Administrative Code, § N41-17.0, subd. b; § N41-2.0, subd. j); and by the further provision that, if no tax has been paid — as was true in the present case for part of the period involved — the city may proceed directly against the purchaser (Administrative Code, § N41-2.0, subd. f).

Thus, the provisions of the sales tax law as well as its design and scheme are clear and efficacious. The statute gives the city the right to collect a tax on local sales, and, to facilitate administration, authorizes the vendor to collect that tax from the purchaser in the first instance and turn it over to the city. If the vendor does not collect from the purchaser, the city may proceed against either purchaser or vendor. If the vendor has paid, it may recoup from its purchaser. If the vendor has paid but — intending to violate the law's provisions — has willfully failed to collect it from the purchaser, the vendor is subject to criminal or other penal consequences. Compliance with the procedure thus provided — rather than double collection of the tax by the city — will best effectuate the nonabsorption policy, or any other policy, assertedly underlying the statute.

In conclusion, then, petitioner should have been credited with the amount of the taxes paid the city by its vendor. Since the latter paid all taxes due for the period ending June 30, 1940, the comptroller's determination of a tax deficiency for that period, in the principal amount of $609.22, with interest and penalties of $557.20, totaling $1,166.42, should be annulled. The

determination of a tax deficiency for the period from July 1, 1940, to December 31, 1942, of $885.15, was correct.

The order of the Appellate Division should be modified by annulling so much of the comptroller's determination as assesses a tax deficiency totaling $1,166.42 for the period ending June 30, 1940, and by directing the comptroller to refund said amount to petitioner, and, as so modified, affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Ordered accordingly.