Ftjld, J.
We granted leave to appeal in this case in order that we might consider important questions involving the construction and administration of the New York City Sales Tax Law.
Appellant W. T. Grant Company, a present-day counterpart of the old five and ten cent store, operates a dozen or so limited price variety retail stores in New York City. It brought this proceeding to review a determination of the comptroller of the City of New York, rendered following a hearing, which assessed a sales tax deficiency against it in the aggregate amount of some $66,000, inclusive of interest and penalties, for the period from October 1, 1945 through December 31, 1948, and the Appellate Division unanimously confirmed.
The local sales tax law, enacted pursuant to authorization of the legislature (L. 1934, ch. 873), imposes a tax at a specified flat percentage rate upon the receipts from every sale made in New York City subject to its provisions. During a portion of the period under review, between October 1,1945 and June 30, 1946, that tax was fixed at the rate of 1%, and during the balance of the period, from July 1,1946 through December 31,1948, the tax rate was 2% (Administrative Code of City of New York, § N41-2.0, subd. a, pars. 6, 7).[1] However, in order to meet the situation where application of the flat tax rate to an individual sale would yield a tax comprising a fraction of one cent, another section of the law (Administrative Code, § N41-3.0) authorizes the comptroller to
“ prescribe [by regulation] a method or methods and/or a schedule or schedules of the amounts to be collected from purchasers in respect to any receipt upon which a tax is imposed by this title so as to eliminate fractions of one cent and so that the aggregate collections of taxes by a vendor shall, as far as practicable, equal one percentum, two percentum or three percentum as the case may be of the total receipts from the sales * * * of such vendor upon which a tax is imposed by this title.”
*201 On the strength of such statutory authority, the comptroller promulgated a schedule of amounts to be collected upon sales in specified categories. Under this schedule — the substance of which is set forth in the footnote[2] — upon sales from 17 cents to 66 cents, a tax of 1 cent was to be collected; upon sales from 67 cents to $1.16, the tax was to be 2 cents; and there were similar gradations affecting sales in specified categories.
The problem posed by the present appeal has arisen by reason of the fact that the comptroller’s schedule of taxes on small sales makes possible the imposition of taxes on individual sales which do not always yield an amount, in the aggregate, equal to 2% of the vendor’s total receipts. The aggregate of the taxes payable may amount to more or less than 2% of the vendor’s total taxable sales, depending upon whether a preponderance of the transactions happens to fall within the lower or the upper end of a particular price range category specified in the schedule. Por example, under the 17 to 66-cent bracket, on which a tax of 1 cent is required to be collected, the tax will amount to over 5%, if the particular sale is one in the neighborhood of 17 cents and will be less than 2% if the sale involves a 66-cent article.
The system used by Grant for collection of the sales tax was, in general, as follows. A metal box, with a coin slit in it, was attached to the side of each cash register; a copy of the comptroller’s bracket schedule was affixed to the register; and the sales clerk would consult the schedule to determine the amount of the tax to be collected and would then deposit that amount in the metal box. The proceeds of the sale, exclusive of the tax, were separately rung up on the cash register and deposited in the register drawer. No written record, however, was kept of the individual tax items collected, either in the form of sales slips, cash register tapes or otherwise, nor apparently was there any permanent record of the individual sales transactions. At the end of the work day, the manager or assistant manager of *202 the store would unlock the metal tax box, the tax receipts would be counted and inserted in a special “ tax bag ” and the total entered on a special form. The tax receipts would subsequently be recounted by the cashier, and the aggregate figure recorded on a daily cash statement. Upon the basis of such weekly cash statements, Grant filed quarter-annual sales tax returns with the city.
One of the items in the sales tax return called upon the taxpayer to show the “ Amount of tax charged or required to be charged to customers (whichever is greater) ”. Grant’s returns, however, did not report the amount ‘ ‘ required to be charged to customers instead, it set forth only its total taxable receipts and the total sales taxes actually collected during the particular three-month period and paid the city either the taxes actually collected or 2% of its aggregate receipts, whichever was greater.
Upon the auditing of its returns by the comptroller, Grant failed to produce or make available any records of the individual sales, of the amount collected as tax on each such transaction or of the number of sales falling into each particular sales tax bracket. Taking the position that Grant had failed to comply with the record-keeping requirements of the law (Administrative Code, § N41-2.0, subd. e; § N41-4.0) and that the returns were insufficient (§ N41-7.0), the comptroller’s auditors proceeded to have a test check made, and the deficiency here under attack was assessed on the basis of that check.
Grant does not challenge the use of the bracket schedule in the collection of the sales tax, and, indeed, its validity is beyond dispute. (See, e.g., RKO-Keith-Orpheum Theatres v. City of New York, 308 N. Y. 493.) Nor does it deny that the purchasers were required to pay the sums specified in the schedule applicable to the particular sales. It is, however, the appellant’s contention that it did not have to account to the city for the precise amounts collectible from its customers on individual sales, so long as it discharged its collection function with reasonable diligence, as it maintains it did here. Its basic claim is that its liability under the sales tax law is either (1) that of a tax collector for the city, in which event it is liable only for the sales taxes actually collected or (2) that of a taxpayer, in which event its liability is limited to an amount equal to 2% of its total taxable sales, if that amount is greater than the amount actually collected.
*203 The comptroller, on the other hand, urges that the measure of a vendor’s liability is the amount of taxes which should have been paid by his purchasers — that is, the amount the vendor was required to collect from his customers — if that amount is greater than either the taxes actually collected or the tax of 2% of his total taxable sales.
There is no doubt that the sales tax law imposes upon the vendor the obligation of a taxpayer in addition to that of a collecting trustee. In plain and unequivocal language, it declares that the tax “ shall be paid by the purchaser to the vendor as trustee for and on account of the city, and the vendor shall he liable for the collection thereof and for the tax ” (Administrative Code, § N 41-2.0, subd. e). "While the incidence of the tax is, in the first instance, placed on the consumer, this court has flatly held that “ vendors * * * are to be deemed taxpayers under this legislation ” (Matter of Fifth Ave. Bldg. Co. v. Joseph, 297 N. Y. 278, 283), that “ the obligation imposed on the vendor is in the nature of a tax ’ ’ which is ‘ ‘ not measured by the amount collected nor dependent upon failure to exercise the diligence in collection which would be required of an agent.” (Matter of Atlas Television Co., 273 N. Y. 51, 57-58; see, also, Merchants Refrig. Co. v. Taylor, 275 N. Y. 113, 124; City of New York v. Feiring, 313 U. S. 283, 287-288.)
Since the tax is thus levied not alone on the purchaser but on the vendor as well, it is a necessary corollary that one measure of the vendor’s obligation as a taxpayer is the tax which his customers were required to pay on individual sales, and that obligation may not be discharged by payment of any lesser amount, irrespective of the vendor’s exercise of reasonable diligence in collection. (See Matter of Atlas Television Co., supra, 273 N. Y. 51, 58.) Although the tax is not, as we have observed, imposed in the first instance on the vendor, “ he is under a duty to pay the tax to the city regardless of whether or not * * * [he] collects it from the purchaser.” (Merchants Refrig. Co. v. Taylor, supra, 275 N. Y. 113, 124.) The ease of Matter of American Cyanamid & Chem. Corp. v. Joseph (308 N. Y. 259), cited in the dissenting opinion, has no bearing on the present problem. All we there held was that the vendor was entitled to rely on his purchaser’s resale certificates — provided for by the sales tax law itself — to the effect that he was purchasing the property for resale; nothing turned on whether the vendor’s status was that of taxpayer as well as collector.
*204 To accept Grant’s position would be to hold that there are separate standards governing the liability of purchaser and vendor. According to Grant, while the purchaser is required to pay the precise amounts specified in the comptroller’s bracket schedule, the vendor is obligated for no more than 2% of its total receipts. That is not, and cannot be, the law. It is clear that the section imposing a tax of 2% “ upon * * * receipts from every sale ” (Administrative Code, § N41-2.0) must be read together with the section authorizing the comptroller to prescribe schedules of the amounts to be collected from purchasers so as to eliminate fractions of one cent (§ N41-3.0). Since it is specified that ‘ ‘ the vendor shall be liable for the collection ’ ’ of the tax to be paid by the purchaser “ and for the tax ” (§ N41-2.0, subd. e), the necessary effect is to equate the vendor’s liability as a taxpayer with the purchaser’s obligation to pay the tax required to be collected. It would be anomalous indeed if the statute were to be read as imposing a higher tax on the purchaser than on the vendor. The liability of the latter is obviously to pay the tax required to be collected from the purchaser (Administrative Code, § N41-2.0, subd. e, as amd.),[3] and it was manifestly contemplated and intended that the amount of the tax on the several individual sales was to be identical so far as both the purchaser and the vendor were concerned. (See Matter of Fifth Ave. Bldg. Co. v. Joseph, supra, 297 N. Y. 278, 283.)
Since, as we have indicated, the vendor occupies the role of taxpayer, as well as collector, and is liable to the city for the taxes which should have been paid by his purchasers (or the amount of taxes actually collected, if that be greater), we would expect the local law to require the vendor to maintain such records, including a record of individual sales, as bear on determining his liability. And, sure enough, so the local law plainly provides. Thus, the statute mandates “ Every person * * * [to] keep records of receipts and of the tax payable thereon ” (Administrative Code, § N41-4.0) and further declares that “ Upon each taxable sale * * * the tax to be collected shall be stated and charged separately from the sale *205 price * * * and shown separately on any record thereof ” (§ N41-2.0, subd. e). Moreover, by article 24 of the regulations promulgated by the comptroller in 1938, and effective during the entire period here involved, a vendor is called upon to maintain “ such other records as may be necessary or required to determine his tax liability or the extent thereof.”[4]
Obviously, these requirements cannot be satisfied by keeping records only of total sales receipts and of total collections, without any record of taxes payable on individual sales where, as here, the extent of the vendor’s tax liability turns on the individual sales receipts and the tax payable thereon in each instance. If no records were kept of individual sales, if the appellant’s system — deposit by the sales clerk of unrecorded coins in a metal box — were sanctioned, there would be no way of ascertaining whether the vendor’s sales clerks were collecting, or whether the vendor was remitting, the full amount of taxes required to be collected from the purchasers. The sales clerks themselves would, for all practical purposes, be the ones administering the sales tax law. Certainly, the collection of the sales tax was never intended to be solely dependent on, and measured by, the honesty, efficiency and accuracy of the vendor’s sales personnel.
Since Grant kept no records whatsoever, not even cash register tapes, adequately reflecting the factors essential to the computation and determination of the sales taxes which should have been collected for the years gone by, it became necessary for the comptroller, pursuant to the authority vested in him, to estimate them “ on the basis of external indices * * * and # # * other factors” (Administrative Code, § N41-7.0; Sales Tax Regulations, art. 24). To establish a basis for such an estimate, the comptroller determined that a test check should be made, and such a test was requested. Grant was permitted to choose the time and length of the test, the method of carrying it out and the number of stores to be canvassed. And, beyond that, Grant was permitted to administer the test itself, in the 12 or 13 stores it had designated, without the slightest super *206 vision or interference from anyone. For an entire week, the period appointed by the appellant for the test, a record of individual sales was kept, and a tally made of the number of transactions falling within each price category on the bracket schedule. That done, the comptroller proceeded to determine the average rate of tax collectible from the purchasers in the various sales made during the test period, and, in accordance with that average rate of tax — which was slightly in excess of the 1% or 2%, respectively, on which Grant had based its returns —’Sales tax deficiencies were assessed for the periods under review.
As to the validity of the test check which was actually used, and the accuracy of the resulting deficiency assessment, little need be said. Grant having admittedly neglected to keep the requisite records of individual sales, some method had to be devised for ascertaining what the taxes should have been. Even when an item-by-item audit is possible, and it was not here, there is no inflexible requirement that the comptroller resort to it. (See Matter of Hillman Periodicals v. Gerosa, 308 N. Y. 982, affg. 285 App. Div. 441.) It is sufficient if the method adopted is reasonably calculated to reflect the taxes due. In the present case, the comptroller employed no arbitrary general formulas or even industry-wide percentages. Instead, he based his inquiry upon the conduct of the appellant’s own business, actually permitting the taxpayer to select the time of the test, its length and method, and afforded it full opportunity, of which it did not avail itself, to show grounds for correction or modification. "While not every test check may be immune from attack, the one here conducted impresses us as being adequate and reasonably designed to approximate the actual tax liability. (See Matter of Hillman Periodicals v. Gerosa, supra, 308 N. Y. 982, affg. 285 App. Div. 441; Matter of Gandolfi & Co., 42 F. Supp. 706, 707; and cf. Maroosis v. Smyth, 187 F. 2d 228, 232, cert. denied 342 U. S. 814; Halle v. Commissioner of Internal Revenue, 7 U. S. T. C. 245, 249-250, affd. 175 F. 2d 500, cert. denied 338 U. S. 949.) True, absolute precision is not achieved, but we do not demand the impossible and, certainly, we will not insist on exactness in a case where the party’s own failure to maintain records prevents it. The law, as well as the taxpayer, must be satisfied with a fair and reasonable approximation.'
*207 On the record before us, we perceive no basis for a charge of unfairness and no warrant for an assertion that the comptroller’s determination was arbitrary or without support.
The order appealed from should be affirmed, with costs.

. Insofar as the problems posed by this appeal are concerned, nothing turns on this difference in rate, and, accordingly, in the interest of clarity, we treat the tax as if it were one of 2% throughout the period involved.

. Sales 17 cents to 66 cents ...................... 1 cent
67 cents to 99 cents ...................... 2 cents
$1.00 ......................................... 2 cents
1.01 to $1.16 ........................... 2 cents
1.17 to 1.66 ........................... 3 cents
1.67 to 2.16 ........................... 4 cents
2.17 to 2.66 ........................... 5 cents
2.67 to 3.16 ........................... 6 cents
On all amounts above $3.16, the tax was to be “ in like proportions ”.

. This is confirmed by the sentence added to subdivision e of section N41-2.0 on July 1, 1946 — in subdivision b of section N41-17.0 prior thereto — to the effect that “ The vendor and any officer of any corporate vendor shall be personally liable for the tax collected or required to be collected under this title”. (Local Laws, 1946, No. 17 of City of New York, § 1.)

. There is no specification of the precise sort of record that must be kept, but one there must be to permit the determination of the vendor’s tax liability. If, as urged by the appellant, the keeping of the requisite records is unduly onerous and expensive, the plaint should be directed to the legislative body responsible for the imposition of the requirement; the courts have no power to change the applicable statutory law or sanction a departure from its provisions.