Ellsworth N. Lawrence, J.
The question presented here is whether New York State may impose and collect income taxes *312 from St. Regis Indians. The income in question was derived from wages.
Appropriate sections of the Tax Law (Tax Law, §§ 350-351) apply to all residents of New York. The Indians involved are all residents of the State, although they actually reside on the St. Regis Indian Reservation in this county.
The fact that the defendants are Indians does not give them any exemption from State income taxes. This was decided as to Federal income tax in Chotean v. Burnet (283 U. S. 691) and as to State income taxes in Leahy v. State Treasurer of Oklahoma (297 U. S. 420).
The fact that the Indians reside on the reservation or elsewhere does not affect their liability to pay State income taxes so long as they are residents of New York. (The Cherokee Tobacco, 11 Wall. [78 U. S.] 616; Choteau v. Burnet, supra.)
Indians, although they are citizens of the United States since 1924 (U. S. Code, tit 8, § 1401), still bear a peculiar relation to the United States. In Cherokee Nation v. Georgia (5 Pet. [30 U. S.j 1) Chief Justice Marshall pointed out that their relation to the United States resembled that of a ward to his guardian. Subsequent decisions have omitted the word “ resembles ” and stated that Indians are wards of the United States. (See, e.g., Oklahoma Tax Comm. v. United States, 319 U. S. 598; United States v. McGowan, 302 U. S. 535; People ex rel. Cusik v. Daly, 212 N. Y. 183; Mulkins v. Snow, 232 N. Y. 47.)
But the Supreme Court has also said that there is nothing in the relationship of guardian and Avard that implies an exception from income and similar taxes. (Superintendent of Five Civilized Tribes v. Comr., 295 U. S. 418; Oklahoma Tax Comm. v. United States, supra.)
The income of any infant is taxable. So also must be the income of any Indian, although his relationship to the United States resembles that of a ward to its guardian. In this regard, only the same duties are exacted from Indians as from others. (Oklahoma Tax Comm. v. United States, supra; The Cherokee Tobacco, supra.)
Squire v. Capoeman (351 U. S. 1) is not to the contrary. The same general principles are there declared. The proceeds of the standing timber on the alloted lands was held in that ease not to be subject to capital gain tax because of the wording of the General Allotment Act (U. S. Code, tit. 25, § 331 et seq.). This distinction is made clear in Superintendent of Five Civilized Tribes v. Comr. (supra).
In my opinion the approval of the United States has never been necessary in order to allow the State of New York to *313 impose income taxes on Indians. The power to tax is one of the incidents of sovereignty. “ Notwithstanding the peculiar relation which these Indian nations hold to the Government of the United States, the State of New York had the power of a sovereign over their persons and property”. (People ex rel. Cutler v. Dibble, 21 How. [62 U. S.] 366, 370. See, also, Jemison v. Bell Tel. Co., 186 N. Y. 493.) As the Court of Appeals said in Mulkins v. Snow (supra) at page 51, in reference to various sections of the State Indian Law, ‘ ‘ The validity of such statutes will not be questioned here ’ ’.
Section 177 of title 25 of the United States Code applies only to purchases and grants of land from Indians, requiring the presence of a representative of the United States in making any treaties in regard thereto. Nothing in that section applies to the power of the State to impose income taxes.
We need not consider here whether section 177 applies to the State of New York at all, although it has been said that it does not, on the theory that New York was one of the original 13 States. (United States v. Franklin County, 50 F. Supp. 152. See, also, St. Regis Tribe of Mohawk Indians v. State of New York, 5 N Y 2d 24 [the Barnhart Island case].) Any language to the contrary used by the United States Court of Appeals, 2d Circuit, in the recent Tuscarora case (Tuscarora Nation of Indians v. Power Auth., 257 F. 2d 885, decided July 24, 1958) need not be followed here in any event, in view of the decision of the Court of Appeals in the Barnhart Island case (supra).
Certainly since the effective date of section 233 of title 25 of the United States Code, that is, since September 13, 1952, the civil laws of New York apply to St. Regis Indians except as limited therein. (Senate Report No. 1836, June 15,1950; House Report No. 2720, U. S. Cong. Service, 1950, pp. 3731-3733.)
Some of the limitations in section 233 of title 25 of the United States Code are that lands within Indian reservations are not ■subject to State or local taxation and that such lands, together with Federal and State annuities shall not be subject to execution on any judgment except one as between tribal members as to the use or possession of land.
From this it follows: (1) Land on the reservation is not subject to State or local real property taxes; (2) if the State obtains a judgment for unpaid taxes of any kind, including income taxes, the State may not levy execution against the annuities or against land on the reservation under section 380 of the Tax Law. The State must in such case resort to other remedies for collection of unpaid taxes. (See Fellows v. Denniston, 23 N. Y. 420; The New York Indians, 5 Wall. [72 U. S.] 761.)
*314 On© of the arguments advanced by defendants is that the imposition of income taxes would result in taxation without representation, it being urged that some part of income tax money would be used for educational purposes, that children of Indians attend the Salmon Central School District in this county and that Indian parents are prohibited from voting at school district elections because of residence on the reservation.
That question is not one which I am required to consider in this case. It is not clear whether or not the St. Regis Indian Reservation is a part of such school district. If it is, the provisions of section 2012 of the Education Law as to the qualifications of voters would seem to be the only test of the right to vote at the school district elections.
But I feel impelled to say this: Indians should have the same voting rights as all other citizens. There must be no discrimination against an Indian because he is an Indian.
The St. Regis Indians not only have the right to vote in tribal elections under section 108 of the Indian Law, but they must also have the right to vote in National, State and local elections.
The State Tax Commission is directed to submit an order in accordance herewith.