ANDREW PIERCE, Doing Business as ANDREW PIERCE TRADING POST, Plaintiff, v. STATE TAX COMMISSION, Defendant.

Supreme Court, Onondaga County, November 4, 1966.

*Omar Z. Ghobashy* for plaintiff. *Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* of counsel), for defendant.

DONALD P. GORMAN, J. The facts are undisputed. Plaintiff is a North American Indian in tribal relations, member of the Onondaga Nation, one of the tribes of the Six Nations Iroquois Confederacy, residing on the Onondaga Reservation in Nedrow, near Syracuse, New York. Plaintiff owns a gift shop located on the Reservation in which he sells articles made by tribal Indians living on the Onondaga Indian Reservation.

Defendant State Tax Commission of the State of New York has required plaintiff to file a certain form Number ST-100 with the State Department of Taxation and Finance under articles 28 and 29 of the Tax Law, which cover the New York State Sales and Use Tax. The plaintiff has refused to file the form, to col-

lect the tax from his customers, or to pay to the Department of Taxation and Finance the taxes claimed to be due on sales made at his place of business. The defendant, State Tax Commission, and the Department of Taxation and Finance are enforcing the New York State Sales and Compensating Use Taxes on plaintiff and others of similar status.

Defendant has moved, under CPLR 3212, for summary judgment to the effect that plaintiff and others similarly situated are subject to articles 28 and 29 of the Tax Law; that articles 28 and 29 of the Tax Law are valid and constitutional in all respects as they apply to plaintiff and others similarly situated. Plaintiff has cross-moved pursuant to CPLR 2215 for an order pursuant to CPLR 3211 for a judgment declaring plaintiff is not subject to the New York State Sales and Compensating Use Taxes (Tax Law, arts. 28 and 29); that the said Sales and Compensating Use Taxes are unconstitutional, illegal and invalid as applied to plaintiff and that defendant and its officers be restrained from enforcing the said Tax Law in connection with the plaintiff.

It has recently been decided that an Onondaga Indian living on his Reservation is subject to the personal income tax imposed by section 351 of the New York State Tax Law in connection with wages earned while employed as a mechanic for the Chrysler Corp. in Syracuse, New York. In its memorandum decision, the Appellate Division, Third Department, stated: "The petitioner here, regardless of his status as a tribal member, was under no statutory restriction as to employment and his earnings did not differ from those of any other resident of the State of New York." (*Matter of Powless* v. *State Tax Comm.*, 22 A D 2d 746, affd. 16 N Y 2d 946, cert. den. 383 U. S. 911; see, also, *State Tax Comm.* v. *Barnes,* 14 Misc 2d 311.)

Although substantially the same arguments are used here as were presented by each attorney to the courts in the *Powless* case, cited above, the circumstances are not entirely analogous. Much has been said through the years in Federal and State decisions on the status of the Indian. As recently as 1958, the Court of Appeals in *St. Regis Tribe* v. *State of New York* (5 N Y 2d 24, 38) reiterated its thinking in *People ex rel. Cutler* v. *Dibble* (16 N. Y. 203, 212–213, affd. 62 U. S. 366): " ' They have been treated, since our first intercourse with them, as *quasi* independent nations or tribes, having governments and institutions and national attributes of their own; but, both collectively and individually, feeble and helpless compared with the whites, and therefore needing constantly the protection and paternal care of the government.' " We have held that the

"power of Congress over the Indians and their tribal affairs and domains is paramount and of a most sweeping character * * * The courts of this State, as well as the Federal courts, have consistently recognized that this paramount power in Congress is applicable to the affairs of the Six Nations within New York State." (*People ex rel. Ray* v. *Martin,* 294 N. Y. 61, 69.) It has been acknowledged that there is a distinction between Indians who maintain their tribal integrity and those who do not, and that the Six Nations have a different relationship with the State and Federal Governments than other Indians, Congress having full authority to legislate for them within their reservation. (*People ex rel. Ray* v. *Martin, supra,* pp. 69–70.) This right of national guardianship has been held to relate principally to property rights and economic welfare. The Federal Government has not yet released its care of the Indians of New York State in the conduct of their affairs. Legislation affecting Indians is to be construed in their interest. (See *United States* v. *9,345.53 Acres of Land, etc.,* 256 F. Supp. 603 [1966]; *United States* v. *Nice,* 241 U. S. 591, 599.)

Effective August 1, 1965, the State of New York enacted a sales and compensating use tax upon receipts from the retail sale or use of tangible personal property and various services as provided in chapters 93 and 94 of the Laws of 1965. Subdivision (a) of section 1132 of the Tax Law provides that every person required to collect the tax shall collect it from the customer when collecting the price; that if the customer is given any sales slip, invoice, receipt or statement of the price, the tax shall be stated, charged and shown separately. The tax is to be paid to the person required to collect it "as trustee for and on account of the state." Subdivision (b) of section 1132 of the Tax Law provides that the Tax Commission shall by regulation prescribe a method(s) or schedule(s) of the amounts to be collected from the customers and that such schedule(s) may provide that no tax need be collected from the customers upon receipts below a stated sum.

Subdivision (a) of section 1133 of this act provides that every person required to collect any tax shall be personally liable for the tax imposed, collected or required to be collected. Subsequent sections of the Tax Law requires every person required to collect any tax to file a certificate of registration (§ 1134); to keep records of every sale and of all amounts paid, the records to include a true copy of every sales slip, upon which the tax is required to be separately stated; the records are to be available for inspection at any time (§ 1135) and quarterly returns

are to be filed with the Tax Commission (§ 1136). Section 1137 holds the person required to file the return responsible for payment of the required tax. Under this section, if the Tax Commission, in its discretion, deems it necessary, it may require any person required to collect the tax to file a bond to secure payment of the tax.

Construing sales taxes, it has been determined that upon the vendor is imposed the obligation of a taxpayer as well as that of a collecting trustee. "While the incidence of the tax is, in the first instance, placed on the consumer, this court has flatly held that ' vendors   *   *   *   are to be deemed taxpayers under this legislation ' (*Matter of Fifth Ave. Bldg. Co.* v. *Joseph,* 297 N. Y. 278, 283), that ' the obligation imposed on the vendor is in the nature of a tax ' which is ' not measured by the amount collected nor dependent upon failure to exercise the diligence in collection which would be required of an agent.' (*Matter of Atlas Television Co.,* 273 N. Y. 51, 57–58; see, also, *Merchants Refrig. Co.* v. *Taylor,* 275 N. Y. 113, 124; *City of New York* v. *Feiring,* 313 U. S. 283, 287–288.)   *   *   *   Although the tax is not, as we have observed, imposed in the first instance on the vendor, ' he is under a duty to pay the tax to the city regardless of whether or not   *   *   *   [he] collects it from the purchaser.' " (*Matter of Grant Co.* v. *Joseph,* 2 N Y 2d 196, 203.) The vendor is liable for the tax even where the regulations provide that no tax need be collected from the purchaser. (*Matter of New York Automatic Canteen Corp.* v. *Joseph,* 8 A D 2d 385, affd. 8 N Y 2d 853.)

From the earliest days under our Federal Constitution, the Federal Government permitted the Indians to govern themselves, largely free from State interference. Certain State laws were permitted to apply to activities on Indian Reservations where the laws were specifically authorized by acts of Congress or where they clearly did not interfere with Federal policies concerning the reservations. (*Warren Trading Post* v. *Tax Comm.,* 380 U. S. 685, 686–687.) Our courts have recognized that Congress has, from other sources, jurisdiction over the Indians, their lands and their affairs. (U. S. Const., art. I, § 8, cl. 3; *People ex rel. Ray* v. *Martin,* 294 N. Y. 61, 69, affd. 326 U. S. 496, *supra.*) The Onondaga Nation has retained its tribal integrity, its government by Council of Chiefs and has clung to the old order of things. Seemingly, the Onondaga Nation, as an Indian Nation duly recognized by the United States Government, has the power of self government. (See *Bennett* v. *Fink Constr. Co.,* 47 Misc 2d 283.) " Their chiefs sit in council as a

court where grievances are still presented and decided. This tribunal has original and general jurisdiction over local affairs of reservation members and its decisions are final, save such appeal may be made to the general council and to the Federal Government." (*Andrews* v. *State of New York*, 192 Misc. 429, 437, affd. 276 App. Div. 814.) The amendment of section 5 of the Indian Law (L. 1953, ch. 671) did no more than open State courts to Indians if they should elect to use them and gave them concurrent jurisdiction with the Indian courts. (*Matter of Jimerson* v. *Halftown Estate*, 22 A D 2d 417.)

A tribe has the ordinary powers of taxation over persons and property within its limits. (*Morris* v. *Hitchcock*, 194 U. S. 384; *Iron Crow* v. *Oglala Sioux Tribe of Pine Ridge Reservation*, 231 F. 2d 89, 98–99.) The United States Supreme Court has called the power to tax, the power to destroy. In holding the property of the United States exempt by the Constitution of the United States from taxation under the authority of any State, the court in *McCulloch* v. *Maryland* (4 Wheat. [17 U. S.] 316, 429, 436) stated that the Constitution and the laws made in pursuance thereof are supreme; they control the constitutions and laws of the respective States and cannot be controlled by them. " The sovereignity of a State extends to everything which exists by its authority, or is introduced by its permission; but does it extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States? We think it demonstrable, that it does not. * * * The States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." (See, also, *United States* v. *Rickert*, 188 U. S. 432; *Liberty Nat. Bank* v. *Buscaglia*, 26 A D 2d 97.)

The gift shop of plaintiff is located on land of the Onondaga Indian Reservation. There plaintiff sells articles made by Indians who, like him, live on the Reservation. Little remains to this tribe of its once proud heritage. But plaintiff has chosen to live his life on his protected reservation and to offer for sale souvenirs of his past and of our history. He has not gone into the world to compete with the ordinary resident of the State. (*Matter of Powless* v. *State Tax Comm.*, 22 A D 2d 746, affd. 16 N Y 2d 946, cert. den. 383 U. S. 911, *supra*; *State Tax Comm.* v. *Barnes*, 14 Misc 2d 311, *supra*.) Under the conditions here subsisting, it is thought that the paramount power of the Federal Government to regulate commerce with the Indians on

their reservation should prevail. This sales and compensating use tax would place on tribal Indians within a reservation the multiple burdens of taxpayer, tax collector, accountant and fiduciary, burdens which could well be in addition to those which the tribe or Congress could prescribe and " thereby disturb and disarrange " activities taking place on a reservation under the protection of the Federal Government. (See *Warren Trading Post* v. *Tax Comm.*, 380 U. S. 685, 691, *supra*.)

Plaintiff's cross motion for a judgment declaring plaintiff is not subject to the New York State Sales and Compensating Use Taxes (Tax Law, arts. 28, 29) is granted; articles 28 and 29 of the Tax Law are unconstitutional, illegal and invalid as applied to plaintiff, and defendant and its officers are restrained from enforcing the said Tax Law in connection with the plaintiff.