AMES VOLKSWAGEN, LTD., et al., Appellants, v STATE TAX COMMISSION, Respondent.

Third Department, July 28, 1977

---

*Martin, Noonan, Hislop, Troue & Shudt (J. Paul Troue* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (Robert W. Bush* and *Ruth Kessler Toch* of counsel), for respondent.

GREENBLOTT, J. Petitioners challenge the constitutionality of certain provisions of the Tax Law. Section 1137-A of the Tax law (references are to the Tax Law unless otherwise specified), the primary focus of petitioner's challenge, is contained within article 28 of the Tax Law dealing with sales and use taxes. Subdivision (a) of section 1105 of that article imposes a 4% sales tax upon the receipts from every retail sale of tangible personal property. A vendor is required to collect the tax from each customer when collecting the price charged for each item of personal property (§ 1132, subd [a]), which he then holds as trustee for and on account of the State (§ 1132, subd [a]). Subdivision (a) of section 1133 makes every vendor required to collect sales tax personally liable for the tax imposed on the article sold whether collected from customers or not. Finally, subdivision (a) of section 1136 mandates that vendors who collect the tax must file returns for quarterly periods ending on the last day of February, May, August and November, respectively. The returns are to be filed, and the taxes due are to be remitted, within 20 days after the end of each quarter (§ 1136, subd [b]).

Subdivision (a) of section 1137-A, effective March 1, 1976, provides that every business "whose taxable receipts, amusement charges and rents totaled three hundred thousand dollars or more" in the quarterly period ending November 30, 1975, had to file as part of the quarterly return and payment due on March 20, 1976 (for the quarter comprised of December, January and February), a return setting forth the total

sales and use taxes *estimated* to be payable setting by the business for the month of March, 1976 and pay to respondent the tax so calculated. Thus a vendor was required to estimate the sales tax which was to become due for sales made from March 20 through March 31, 1976 inclusive. Additionally, subdivision (a) of section 1137-A, in conjunction with subdivision (a) of section 1145, provided that a vendor would be subject to interest and penalties for under-estimating by more than 10% the actual sales tax found to be due at the end of March. However, no interest was to accrue after April 20, 1976.

Subdivision (b) of section 1137-A essentially extends the requirements of subdivision (a) to cover the year 1977 and following years. Subdivision (a) of section 1136, effective March 1, 1976, provides that prior to September 1, 1977, all vendors "whose taxable receipts, amusement charges and rents total three hundred thousand dollars in every quarter of the preceding four quarters" must file either a long-form or short-form, part-quarterly return monthly with the respondent commission. After September 1, 1977, vendors doing a hundred thousand dollars business or more in any of the preceding four quarters must file a part-quarterly return monthly with the Tax Commission. Subdivision (b) of section 1137-A then mandates that every seller who must file monthly returns, pursuant to the above provisions of subdivision (a) of section 1136 "shall file, on or before each twentieth day of March, with or as part of the monthly return and payment otherwise due in such month", either a long-form or short-form, part-quarterly return setting forth the *sales taxes estimated* to be payable for the month of March. In sum, then, subdivision (b) of section 1137-A provides that those vendors required to file monthly returns pursuant to subdivision (a) of section 1136, must also file as part of the monthly sales tax return for the month of February, due on March 20, a return for the month of March. This system again compels the vendor to estimate, at a minimum, what sales will be made during the period March 20 through March 31.

Petitioners, all of whom are automobile dealers in the State of New York, seek a judgment enjoining respondent from enforcing section 1137-A, from imposing penalties and interest under subdivision (a) of section 1145, and a determination that section 1137-A and portions of section 1145 are unconstitu-

tional. Special Term held the questioned provisions to be constitutional.

The estimation and prepayment of taxes has been required by both the Federal Government and New York State in a number of tax situations. In particular, both the Internal Revenue Code and article 22 of the Tax Law mandate that certain individual taxpayers estimate and pay in advance their yearly income taxes. Section 6015 of the Internal Revenue Code (US Code, tit 26, § 6015) provides that every individual must make a declaration of his estimated tax for the taxable year if his gross income for the taxable year can reasonably be expected to exceed a certain amount. In *Erwin v Cranquist* (253 F2d 26, cert den 356 US 960) the Ninth Circuit Court of Appeals was confronted with a constitutional challenge to the tax estimation provisions of section 58 of the 1939 code, the predecessor statute to section 6015 of the current code. The court upheld the "pay-as-you-go" provisions of the 1939 code. We note that in the collection of the Federal and New York State estimated taxes, the taxpayer is required to pay on June 15 for the period ending June 30 and on September 15 for the period ending September 30 (Internal Revenue Code of 1954 [US Code, tit 26, § 6153]; Tax Law, § 656). Thus, the taxpayer is required to pay on income which he may not yet have earned. This is an analogous situation to the case at bar and has been upheld on several occasions (see *Jacobs v Gromatsky,* 494 F2d 513, cert den 419 US 868; *Walker v United States,* 240 F2d 601, cert den 354 US 939). Hence, it would seem that requiring a taxpayer to estimate taxes to be incurred on future income and to remit payments based upon those estimates is not a deprivation of property without due process of law, nor in any other sense, violative of the mandates of the Federal Constitution. It is true that in attempting to analogize the estimated tax imposed in the present case to the estimated tax sustained in the foregoing cases, it is crucial to note that a vendor responsible for collecting sales tax is characterized by subdivision (a) of section 1132 of the Tax Law as a "trustee" whereas the individuals involved in the above case were "taxpayers" in the ordinary sense of the word. Petitioners contend that although it is constitutionally permissible to require income taxpayers to estimate their taxes, this is a different matter from that of compelling a mere trustee of sales taxes to pay a portion of those taxes in advance of collection of the tax from the parties

upon whom the legal incidence of the tax ultimately falls, the customers. The petitioners contend that the vendors-trustees in the instant case are deprived of property without due process of law.

An examination of the status of the vendor within State and New York City sales tax systems reveals that the Court of Appeals has consistently treated the vendor as a taxpayer. In *Matter of Merchants Refrig. Co. v Taylor* (275 NY 113, 118) the court cited with approval language from *Matter of Atlas Tel. Co.* (273 NY 51) that "the obligation imposed upon the vendor is in the nature of a tax". In *Matter of Fifth Ave. Bldg. Co. v Joseph* (297 NY 278, 283), in analyzing the New York City sales tax, the Court of Appeals ruled that "vendors [citing cases] as well as purchasers [citing cases] are to be deemed taxpayers under this legislation, and the duty to pay is 'in the alternative' ". (See, also, *Matter of Grant Co. v Joseph,* 2 NY2d 196, cert den 355 US 869.) At page 203 the court said:

> "There is no doubt that the sale tax law imposes upon the vendor the obligation of a taxpayer in addition to that of a collecting trustee. In plain and unequivocal language, it declares that the tax 'shall be paid by the purchaser to the vendor as trustee for and on account of the city, and *the vendor shall be liable for the collection thereof and for the tax'* (Administrative Code, § N41-2.0, subd. e). While the incidence of the tax is, in the first instance, placed on the consumer, this court has flatly held that 'vendors * * * are to be deemed taxpayers under this legislation' *(Matter of Fifth Ave. Bldg. Co. v. Joseph,* 297 N. Y. 278, 283), that 'the obligation imposed on the vendor is in the nature of a tax' which is 'not measured by the amount collected nor dependent upon failure to exercise the diligence in collection which would be required of an agent.' "

Where a vendor has declared bankruptcy and the City of New York has sought a priority for its claim against the vendor for sales tax due, the sum of money found to be owed by the vendor to the city has been characterized as a tax rather than a mere debt and the vendor has been found to be akin to a taxpayer *(New York v Feiring,* 313 US 283; *Matter of Atlas Tel. Co.,* 273 NY 51; *Matter of Rockaway Paint Centre [Minkoff],* 249 App Div 66; see, also, *United States v New York,* 315 US 510).

In sum then, the United States Supreme Court and the

courts of this State have consistently characterized the obligations of a vendor required to collect sales taxes as those of a taxpayer. Since requiring certain individual taxpayers to estimate and prepay income taxes has passed constitutional muster, and since a number of other tax estimation statutes have met with judicial approval (see, e.g., *People ex rel. Bass, Ratcliff & Gretton v State Tax Comm.,* 232 NY 42, affd 266 US 271 [prepayment of annual corporate franchise tax]), chapter 89 of the Laws of 1976 should also be regarded as placing constitutionally acceptable tax estimation and prepayment burdens upon sales tax paying vendors. Petitioners certainly have not raised any legitimate basis for distinguishing sales taxpayers from other taxpayers required to estimate their tax obligations. Perhaps chapter 89 entails certain financial hardships for the automobile dealers challenging its provisions, but:

> " '[M]inor inequalities and hardships are incidents of every system of taxation'. *(Salomon v. State Tax Comm.,* 278 U. S. 484, 491-492.) * * * 'At best, the responsibility for devising just and productive sources of revenue challenges the wit of legislators. Nothing can be less helpful than for courts to go beyond the extremely limited restrictions that the Constitution places upon the states and to inject themselves in a merely negative way into the delicate processes of fiscal policy-making. We must be on guard against imprisoning the taxing power of the states within formulas that are not compelled by the Constitution but merely represent judicial generalizations exceeding the concrete circumstances which they profess to summarize' " *(Shapiro v City of New York,* 32 NY2d 96, 108, app dsmd 414 US 804).

As the Court of Appeals noted in *Gautier v Ditmar* (204 NY 20, 28):

> "By whom, when and through what procedure or remedy, taxes shall be collected is a matter for legislative determination, subject to the rule that the procedure cannot be utterly unreasonable or arbitrary or unequal and unjust in its operation." (See, also, *Matter of United States Steel Corp. v Gerosa,* 7 NY2d 454.)

Requiring certain large-volume vendors to estimate and prepay sales taxes for the latter portion of the month of March and to be subject to interest and penalties for underestimation

of the tax due, is neither an arbitrary nor unreasonable procedure for collection of revenue by the State.

The judgment should be affirmed, without costs.

MAIN, J. (dissenting). I respectfully dissent.

In my opinion the challenged statutes are unconstitutional and, accordingly, the judgment of Special Term should be reversed. While agreeing with Special Term that the Legislature is vested with the power to impose a sales tax and that it has broad discretion in establishing the manner in which the tax is to be collected *(Gautier v Ditmar,* 204 NY 20), I would point out initially that its authority in this area is not unlimited, as for example, it cannot ignore constitutional restrictions thereon (see *Shapiro v City of New York,* 32 NY2d 96).

Generally, the sales tax is included under the category of excise taxes which may be "imposed on importation, consumption, manufacture and sale of certain commoditites, privileges, particular business transactions, vocations, occupations, and the like" *(Thomas v United States,* 192 US 363, 370). The common thread running through all of these various imposts is the presence of a taxable event or *res* to which and upon the happening of which the tax attaches. (See, generally, *Harvester Co. v Department of Treasury,* 322 US 340; *Steward Mach. Co. v Davis,* 301 US 548.) With regard to the sales tax, the taxable event is quite logically a retail sale (Tax Law, §§ 1105, 1110), and the incidence of the tax was plainly intended to fall upon the purchaser and not the retailer (Tax Law, § 1133, subd [a]). Such being the case, the fundamental question presented for our determination is whether or not respondent may, pursuant to section 1137-A of the Tax Law, properly collect the tax from petitioners and others similarly situated for sales which have not and may not ever take place.

It is my view that respondent is without authority to take such action. To hold otherwise is to force petitioners to reach into their own pockets to pay the tax for at least the period March 20 through March 31, there having occurred no taxable event, i.e., actual sales, upon which the tax could be levied or collected (cf. *Matter of Komp v State Tax Comm.,* 56 Misc 2d 824), and this would constitute nothing less than the confiscation of petitioners' property without just compensation and an obvious denial of due process. As such, the tax is constitution-

ally prohibited and cannot be sustained *(Shapiro v City of New York, supra).*

Cases relied upon by Special Term and the majority as being supportive of the challenged enactments are clearly inapposite. The "pay-as-you-go" procedures for the collection of estimated income taxes, which have been judicially approved *(Erwin v Cranquist,* 253 F2d 26, cert den 356 US 960; *Jacobs v Gromatsky,* 494 F2d 513, cert den 419 US 868; *Walker v United States,* 240 F2d 601, cert den 354 US 939) are not analogous to the estimated sales tax. The estimated income tax must be paid "as income is earned" *(Beacham v Commissioner of Internal Revenue,* 28 USTC 598, 600, affd 255 F2d 103) by those who are "in the process of earning or deriving income" *(Erwin v Cranquist, supra,* p 27). Here, respondent seeks to compel petitioners to pay taxes on nonexistent sales which, as noted above, may never occur, and the tax might more appropriately be labeled a "pay-whether-you-later-go-or-not-tax".

On this same issue, the majority's reliance upon provisions of the Federal Tax Code and State Tax Law providing for the payment of estimated income taxes on June 15 for the period ending June 30 and on September 15 for the period ending September 30 (Internal Revenue Code of 1954 [US Code, tit 26, § 6153]; Tax Law, § 656) is unconvincing. An examination of the Internal Revenue Code reveals that taxpayers are entitled to file one amended declaration of estimated income tax liability for each interval between installment payments (US Code, tit 26, § 6015, subd [e]; § 6073, subd [c]) and amended declarations are also permitted by the State (Tax Law, § 656, subd [c]). Accordingly, by the proper implementation of available procedures, a taxpayer need never pay an estimated income tax upon moneys which are not yet earned and may never be earned. In contrast, an error of greater than 10% by petitioners in estimating their sales tax liability for the period in question here renders them subject to the payment of interest plus penalties (Tax Law, § 1145), and the situation cannot be rectified by the filing of an amended declaration.

Similarly, additional analogies drawn by respondent in support of the tax are likewise unpersuasive. For example, the gasoline tax at issue in *Pierce Oil Corp. v Hopkins* (264 US 137) involved the collection of the tax by gasoline dealers and the *subsequent* pay over of the amount accrued each month to the taxing officials. Also, the various requirements for with-

holding moneys from amounts *already* earned to satisfy a tax liability (see, e.g., *Brushabler v Union Pac. R.R.,* 240 US 1) are readily distinguishable from the instant situation.

In sum, no authority has been presented wherein is approved the mandatory prepayment of a tax based upon the expected later happening of a taxable event. Consequently, even assuming *arguendo* that petitioners' position is at least akin to that of a taxpayer, a proposition without supporting precedent under the circumstances of this case where there is a conceded lack of a taxable event or *res,* nonetheless the challenged statutes still do not pass constitutional muster, and they should be declared null and void.

Lastly, it must be recognized that the avowed purpose of the statutes and the reason for their enactment, i.e., the easing of the State's fiscal situation annually at the close of its fiscal year on March 31, is no justification for the estimated sales tax. If the State is unable to keep its expenditures within the limits of its receipts, corrective action is undoubtedly necessary, but the situation does not warrant the annual extraction from petitioners and other retailers of what is actually an interest free loan under the guise of the tax. Moreover, condoning such unconscionable legislation is merely to invite an estimated income tax structure whereby, for example, income tax payments would be due in 1977 for moneys the citizenry will hopefully earn in 1978.

The judgment of Special Term should be reversed.

KOREMAN, P. J., and SWEENEY, J., concur with GREENBLOTT, J.; MAIN, J., dissents and votes to reverse in an opinion, LARKIN, J., not taking part.

Judgment affirmed, without costs.