■ In the Matter of LEONARD GOLDNER, Doing Business as SINGER'S RESTAURANT, Petitioner, v STATE TAX COMMISSION, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a deficiency in sales tax due of $11,468.56 plus statutory interest for the period March 1, 1970 to May 31, 1973. Petitioner, individually, owns and operates Singer's Restaurant in Liberty, Sullivan County, New York. In addition to restaurant service for consumption on-premises, petitioner maintained a service bar where delicatessen cold cuts, sandwiches and beverages were sold for off-premises consumption. Since petitioner sold some food items for off-premises consumption, he was entitled to the benefit of the exemption provided in section 1105 (subd [d], par [i], cl [3]) of the Tax Law to the effect that receipts from sales of food or beverages in a restaurant are exempt from the sales and use taxes, if sold for consumption off the premises and, except for sandwiches, are in an unheated state, and are of a type commonly sold in the same form in establishments which are food stores. During the period from April 1 to April 8, 1973, respondent conducted a field audit of petitioner's business for the period of March 1, 1970 to May 31, 1973 which resulted in the issuance by the Sales Tax Bureau on March 19, 1974 of a notice of determination and demand for payment of sales and use taxes due for the audit period in the amount of $23,781.37, plus penalty and interest of $7,389.15, for a total of $31,170.52. Petitioner had failed to keep register tapes or copies of customers' sales receipts for the period in issue as required by section 1135 of the Tax Law. The auditor, therefore, made estimates based on two test analyses he conducted. During the period April 1 to April 8, 1973, the field auditor found that the cash register was short $149.55 on a gross of $5,017.50, or 3.1% shortage. The auditor assumed that the 3.1% shortage was the average for the entire period in question, and multiplied 3.1% times the gross sales of the entire 3¼-year audit period to arrive at additional taxable sales of $26,623. In addition, on March 30, 1973, the auditor computed the sales tax returns for that one day, and discovered that the guest checks available showed sales tax overcharges of 0.8%. The

auditor applied this day's error to the 1,100 days of the audit period, and the taxpayer was assessed an additional $203.98. The auditor also determined that petitioner's beer and liquor sales were underestimated during the period in the amount of $28,345. In computing the deficiency, the auditor also included 90% of the reported nontaxable sales pursuant to section 1105 (subd [d], par [i], cl [3]) of the Tax Law, and determined that the nontaxable sales figure should be reduced to $40,681. Respondent declared that the Sales Tax Bureau's computation of additional tax, based on the auditor's tests was, in part, erroneous. It adjusted the computation of additional taxable sales by using a figure of 28.4% of gross delicatessen sales to represent nontaxable sales. This figure was determined from the April 1 to April 8, 1973 test, and reflects the proportion of taxable and nontaxable delicatessen sales in that period. Respondent adopted the other calculations of the Sales Tax Bureau, and affirmed a total due of $11,468.56, plus statutory interest, but waived the penalty and additional interest imposed by the Sales Tax Bureau. A summary of the field audit report, and the determination of respondent is as follows:

|  | Field Audit Report | Tax Comm. Determination |
|---|---|---|
| Gross sales reported | $ 858,425.00 | $ 858,425.00 |
| Sales unreported | 26,623.00 | 26,623.00 |
| Add'l beer & liquor sales | 28,345.00 | 28,345.00 |
| Total gross sales | 913,393.00 | 913,393.00 |
| Nontaxable sales | 40,681.30 | 259,403.81 |
| Total taxable sales | $ 872,711.70 | $ 653,989.19 |
| Total tax due | 49,074.49 | 36,762.22 |
| Add'l tax overcharge | 204.52 | 203.98 |
| Total | $ 49,279.01 | $ 36,966.20 |
| Tax paid | 25,497.64 | 25,497.64 |
| Total due | $ 23,781.37 | $ 11,468.56 |

Petitioner asserts that his total tax payments for this period, $25,497.64, represent his complete sales tax obligation. Petitioner contends that he had no notice of the tests conducted by the auditor and that it is irrational to base 39 months of taxes on such test results. Petitioner also asserts that the markup on liquor, beer and soda sales, which added some $28,345 to petitioner's taxable sales, has no support in the record. Respondent argues that petitioner did not sustain his burden of proving error in the method of determining taxes due, and the exact amount of such error. Respondent asserts that the auditing procedure it used was both reasonable and proper in view of petitioner's totally inadequate records, and that the determination is supported by substantial evidence. While petitioner did maintain certain records such as sales journals and ledgers, this information could not be verified because petitioner did not retain cash register tapes or guest checks prior to notice of the audit. This failure to keep the cash register tapes was a clear violation of section 1135 of the Tax Law. These inadequate records forced the auditor to pick a test period for which cash register tapes were available. This was done, and the period of April 1 to April 8, 1973 became the test period. The tapes were compared to the records which petitioner had, and it was discovered that sales, as recorded in petitioner's journals, were underestimated by 3.1%, and a markup test applied to petitioner's beer and liquor sales resulted in an increase in gross sales. Respondent found that these two items of increased sales were the result of

an audit "which followed generally accepted procedures and tests, consistent with the nature of the business operations." Petitioner contends that the auditing procedures which formed the basis of respondent's determination were arbitrary and capricious in several respects. Subdivision (c) of section 1132 of the Tax Law places the burden of proof upon a person required to collect sales tax to prove that any sale he makes is not taxable, and if he does not meet this burden of proof, the sale is presumed to be taxable. Petitioner clearly did not meet this burden of proof, and could not, with the inadequate records which he maintained for his restaurant-delicatessen. Petitioner has not shown that there was an error in the amount of the assessment, nor has he presented substantive evidence to show that the basis upon which the additional sales taxes due were determined was unreasonable or unfair or reached an unfair or improper result. Petitioner argues that respondent's determination was arbitrary, capricious, and not supported by substantial evidence because the commission did not accept his journal entries in their entirety for the period of the audit. Under general accounting principles, respondent was not required to accept petitioner's word on this key point because his journals could not be independently verified for accuracy since he violated section 1135 of the Tax Law by not keeping his cash register receipts. "Subdivision (a) of section 1138 of the Tax Law allows the Tax Commission to determine tax due using 'such information as may be available' if the amount of tax actually paid is incorrect. It then provides that "[i]f necessary, the tax may be estimated on the basis of external indices, such as * * * purchases". Petitioners argue that available information was adequate for purposes of determining tax due. Thus, it was not 'necessary' to examine external indices and the decision to do so was error. We need not decide whether the Tax Commission must demonstrate the inadequacy of available information before it may seek further information since we have determined that the available information in this case was inadequate and it was necessary to look to other sources." (Matter of Meyer v State Tax Comm., 61 AD2d 223, 226, mot for lv to app den 44 NY2d 645.) Petitioner contends that it was illogical to adopt his tapes for an eight-day period to compute his tax liability for a 39-month period. However, the case of Matter of Markowitz v State Tax Comm. (54 AD2d 1023, affd 44 NY2d 684) squarely supports respondent's determination. In the Markowitz case, this court upheld the projecting of a one-day test period over a three-year audit period stating (p 1023): "We must conclude that it was petitioner's own failure to maintain proper records which brought about such a sparse spot check. Although it is probably true that cash register tapes of several days would give a better picture of the business of the petitioner and thus his tax liability, exactness is not required where the party's own failure to maintain the proper records prevents it (Matter of Grant Co. v Joseph, 2 NY2d 196)." Since no records with a correct breakdown existed, respondent was perfectly justified in projecting a tax result over the entire audit period. In view of the fact that adequate records were nonexistent, respondent had no choice but to use the most reasonable means available, thus the test projection based on the petitioner's available records was absolutely proper, and because petitioner produced no figures to rebut any of the audit or hearing findings, respondent's determination must be sustained. Determination confirmed, and petition dismissed, without costs. Greenblott, J. P., Staley, Jr., Main, Mikoll and Herlihy, JJ., concur.